## THE SMEDLEY (two cases).

### (District Court, S. D. New York. February 13, 1914.)

1. COLLISION (§ 71*)—MOVING BOATS IN SLIP—DUTY OF CARE.
   Those engaged in moving boats in a slip are bound to the exercise of reasonable care to prevent injury to other vessels, and are liable for an injury which such care would have prevented.
   [Ed. Note.—For other cases, see Collision, Cent. Dig. § 101; Dec. Dig. § 71.*]

2. COLLISION (§ 141*)—MOVING BOATS IN SLIP—UNSEAWORTHINESS OF INJURED VESSEL.
   The owner of a coal boat, which was negligently struck and sunk by another boat being moved past her in a slip, held entitled to recover half damages; it being shown that, but for her age and weakened condition, she would not have been injured so badly, if at all.
   [Ed. Note.—For other cases, see Collision, Cent. Dig. § 294; Dec. Dig. § 141.*]

In Admiralty. Suit for collision by Ned Irish and J. B. Irish, copartners trading as Irish Bros., owners of the coal boat Macy, against the barge Smedley, the Powelton Barge Company, claimant, with the Baltimore & Ohio Railroad Company and the Staten Island Rapid

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Transit Railway Company impleaded. Decree for libelants for half damages against the Rapid Transit Company.

Harrington, Bigham & Englar, of New York City, for libelants.

Chauncey I. Clark, of New York City, for claimant.

Cravath & Henderson, of New York City, for respondents.

HAZEL, District Judge. In September, 1907, the coal boat Macy was moored at the dock at Staten Island, not far distant from the coal chutes maintained by the respondent the Staten Island Rapid Transit Railway Company. The Macy had been under the chutes, and had taken aboard about 150 tons of coal, when the loading was temporarily discontinued and she was moved away by the employés of the Rapid Transit Company to a point farther up the pier, in order to permit the barge Smedley to load. After the Smedley was loaded, she was hauled past the Macy by a line on a manually operated winch, and in the course of the shifting operation she struck the Macy on her port bow, causing her to sink shortly afterwards, when she had again been moved under the chutes and completed her loading.

The libel filed against the barge Smedley alleged that the sinking was wholly due to her fault in not keeping clear, but subsequently, on petition of the owner of the Smedley, the Staten Island Rapid Transit Company was brought into the proceeding under a provision of the admiralty rules. At the close of the evidence the libel against the barge was dismissed, and the question now is whether the Rapid Transit Company, whose employés were in sole charge of the movements of the Smedley at the time of the collision, were in fault for the injuries sustained by the Macy. Though the impingement is conceded, it is claimed that the impact was slight, being a blow such as ordinarily occurs where boats are moved from one place to another in a slip, and that the Macy was unseaworthy and unfit, and should not, therefore, have exposed herself to such ordinary dangers.

[1] I think it is the law that those engaged in the moving of boats in a slip in the vicinity of other boats moored to a dock must exercise reasonable care in the performance of their work, and must be held responsible for injuries inflicted where boats are shifted with the assistance of a hand winch in such a careless manner as to impinge other boats moored to the dock. Of course, liability does not always follow from ordinary contacts such as are not inconsistent with the exercise of reasonable care in moving a boat; but in the present case the evidence shows that though the barge was moved slowly, and a man stood forward with a pole to prevent contact, and though the master of the Macy shouted out a warning when the Smedley was about eight feet distant, the boats were nevertheless permitted to collide. It is true that the contact was not severe; but in view of the fact that the Macy was partially loaded, as was also the Smedley, it was more harmful than if they had been without load, and forced the Smedley over against the dock and spiles. In view of the manual operation of the winch and the presence of the man forward with the pole, the contact was unjustifiable, and could have been avoided by the exercise of a proper degree of care.

[2] While the injured boat was old and weak, still it is not shown, as claimed by the respondents, that the forward planks were rotten, or that she was unfit for transporting coal. Indeed, the testimony of the witness Jensen was to the effect that a survey showed that her timbers were all right, both at the bow and the stern, and that in his judgment the appearance of the break in her planks indicated that it had been caused by an impact which forced her against the spiles or side of the dock. There not only was evidence to show that the Macy was old and weak, but it was conceded that she had previously been jammed by ice in the river and sunk, and that at another time she turned turtle, and as it does not appear to what extent she was repaired, or whether or not she was overhauled following such mishaps, I am in doubt as to whether she would have withstood the Smedley if she had been a more substantial boat; the testimony of the respondents being to the effect that the probabilities are that she would not have sustained damage from so slight a contact if she had not been so old and weak. In this view of her condition, she must be held to be also in fault; for, as said by Judge Brown in The N. B. Starbuck (D. C.) 29 Fed. 797:

"To allow old boats, that give no notice of their weakness, a right to be fully repaired, would encourage them to run in the way of others."

Moreover, the fact that the mishap occurred more than 6 years ago, and that the libel was not filed until January, 1913, about 5½ years thereafter, would seem almost sufficient to bar the claim of the libelants for staleness. Certainly the delay may be considered in support of the view that the Macy, though not wholly in fault, was, because of her evident weakness, partially so.

A decree may be entered for half damages in each case, and a reference taken to a commissioner to ascertain the amount.