### THE B. F. GUINAN.
### THE CAPE FRANKLIN.

District Court, E. D. New York.
Jan. 7, 1930.

278

Bigham, Englar, Jones & Houston, of New York City (Andrew J. McElhinney, of New York City, of counsel), for libelant.

John R. McMullen, of New York City, for claimant.

INCH, District Judge.

Both the libelant and claimant have filed exceptions to the report of the commissioner duly appointed herein. Certain of the exceptions present interesting questions. I think, however, that decisions show they have been previously answered.

Libelant's coal boat Cape Franklin, while lying at the dumper slip, Port Reading, N. J., was damaged by the barge B. F. Guinan, and the latter has been duly found to be liable for such damages.

The evidence shows that the Cape Franklin was in reasonably sound and seaworthy condition prior to her accident. She is one of the large coal boats of the harbor, and there is nothing to indicate that she was an old boat or in a weakened condition.

The collision occurred on April 18, 1924. Suit was commenced by libelant on May 8, 1925. Claimant answered April 15, 1926. The issue was brought to trial March 8, 1929, and decided in favor of libelant on May 3, 1929. The report of the commissioner was filed November 14, 1929.

Shortly after the accident the Cape Franklin was surveyed, and certain temporary repairs were then made.

The commissioner agrees with libelant that the damages to be recovered shall be sufficient to restore the injured vessel to the condition in which she was at the time the collision occurred. The Baltimore, 8 Wall. (75 U. S.) 377, 19 L. Ed. 463; The Granite State, 3 Wall. (70 U. S.) 310, 18 L. Ed. 179; The Elmer A. Keeler (C. C. A.) 194 F. 339.

This damage is not affected by the fact that temporary repairs were made. The Elmer A. Keeler (C. C. A.) 194 F. 339; The William E. Ferguson (C. C. A.) 108 F. 984.

It can be proven by expert testimony, although the work is never actually done. Pennsylvania R. Co. v. Downer Towing Corp. (C. C. A.) 11 F.(2d) 466.

Following the above rule, the commissioner has taken a considerable amount of expert testimony, and has found that the cost of restoring the Cape Franklin to her condition before the collision will be $880.

Libelant excepts to this finding on the ground that there is no proof in the record to justify it. The claimant excepts to this finding on the ground that the proof shows that the temporary repairs made, under which the Cape Franklin has been apparently successfully operating during five years since the collision, cost but a small sum, and that such sum is all that libelant is now entitled to receive.

The testimony produced before the commissioner shows that these temporary repairs did not put the boat back into the same condition she was in before the accident. The work done has been termed "a patch job." It made the boat seaworthy, and "to a certain extent she was capable of carrying cargo, but going across the bay, probably in rough weather, that plank would help to start and open up the seams. If she had gone into heavy sea and she got a light touch with a tug boat on the boat it would help to start that bow."

In my opinion, therefore, the proof shows that the commissioner was right in not following the contention of the claimant that the cost of this temporary repair job was the limit of the damages now due libelant. Thus the exception of the claimant to this finding of the commissioner must be overruled.

The exception of the libelant to this finding presents a different question.

It appears that what happened was that after the accident the Cape Franklin had been sent to the Tottenville dry dock. O'Connor, the superintendent of that shipyard, testified that this was done for the purpose "to get a quick job done, probably to hold a survey and do the work and then find out what they need for the boat in a hurry and the amount of the bill may come to $150., and they get an accommodation bill of $1214., or whatever amount the survey may be and then when they have time they send a boat in there to do the work."

In this case it clearly appears that, aside from the cost of these temporary repairs, the cost of restoring the Cape Franklin, in accordance with the survey, to the condition she was previously in, is represented by the sum of $1,214.

There is no disagreement between the expert testimony of libelant and the expert testimony of claimant in this regard. The testimony for the libelant shows that this sum of $1,214 represents the fair and reasonable cost of the permanent repairs. The expert for claimant, when asked if he agreed that this estimate was the fair and reasonable price for doing such work, stated, "It is a trifle higher than my estimate but the difference is so very slight."

It would seem, therefore, that the testimony justified a finding that the sum of $1,-214 was the proper amount.

The commissioner, however, has found that, in order to make these repairs, it was contemplated that certain planks would have to be removed and replaced, or, if damaged in such removal, be replaced by new planks, and that, inasmuch as this work has not as yet been actually done, or, as he states it, "for the reason that 18 planks were never required to be removed," there should be a deduction from this sum of $1,214, and accordingly he has come to the conclusion that, in spite of the expert testimony, the cost of restoring the Cape Franklin to the same or as good condition as she was prior to the collision could be accomplished at a cost of $880.

While a commissioner is not necessarily bound by expert testimony, there must be some evidence in the record on which to base such a departure from the testimony, and, in the absence of such evidence, there is nothing to dispute the testimony of the experts.

This is not a question of a choice presented between two experts' opinions. The Edward G. Murray (C. C. A.) 278 F. 895–899. Nor is it a question of the undoubted right to prefer testimony of eyewitnesses to that of experts. The Johnston v. Turnbull (C. C. A.) 130 F. 769. Nor is there any conflict between the opinions of different experts which sometimes allows a conclusion between those reached by the different witnesses. 22 C. J. § 828.

The commissioner, so far as I can see, decides that it would not be equitable to make the claimant pay for damaged planks where such damage is not actually shown, and therefore, in that sense, arbitrarily, refuses to follow the expert opinions in this regard. The testimony shows, however, as might naturally be inferred, that, when planks are so taken out, they are reasonably likely to be broken or found unfit to replace. The expert for claimant testified: "Q. Is it true when planks are taken out the planks are broken or unfit to be put back? A. That is the usual custom."

In other words, all the experts testified to the presence of this not unusual and reasonable expense. To restore the Cape Franklin or to make permanent repairs it will be necessary to remove the 18 planks does not seem to be disputed. The only question is that raised by the commissioner as to whether such planks, when so removed, might be found broken and unfit to be replaced.

This is libelant's day in court. He is entitled to have the planks removed and replaced by sound planks. Assuming, as we may, that libelant is dependent upon the money received from claimant to so restore its boat, what will happen if in the near future this is done by libelant and then it is found that the experts were right in their estimate and the commissioner was wrong in his opinion. Surely the libelant could not then ask the court for further money. Libelant should not be compelled to take this chance.

Rather the rule would appear to be, where the testimony is as presented by this record, that "the party in fault upon the

merits of the case must bear whatever inconvenience or hardship there may be in proving the exact amount of damages sustained; and, if the party not in fault derives incidentally a greater benefit than mere indemnification, it arises only on the impossibility of otherwise effecting such indemnification without exposing him to some loss or burden which the law will not place upon him." The May Flower, 1 Brown's Adm. 376, Fed. Cas. No. 9345, affirmed as The Dove, 91 U. S. 381, 23 L. Ed. 354; The Mason (C. C. A.) 249 F. 718–720.

The report of the commissioner is advisory. The final decision rests with the court. The Spica (C. C. A.) 289 F. 436.

It seems to me, therefore, that there should be some substantial basis, resting on the testimony in the record, for such deduction before the unanimous opinion of the experts can be thus modified or rejected.

While these permanent repairs have not as yet been made, it would appear, from the record of the proceedings in this case first above cited, that the suit was brought with reasonable promptness, and has but recently been decided without any delay for which libelant can be blamed. It is not unreasonable, therefore, to allow a libelant the time in which to make permanent repairs represented by the period during which libelant has been thus endeavoring to legally ascertain the cause of the damage and who is to pay for it.

Nor does the cost of the permanent repairs here appear to be out of proportion to the value of the boat, as was in the case of Streckfus Steamboat Line v. U. S. (C. C. A.) 27 F.(2d) 251. Nor does the proof show that the condition of the Cape Franklin was such as testified to in the cases of The Downer (D. C.) 274 F. 220; The Smedley (D. C.) 216 F. 926; Walaas v. Johnson (C. C. A.) 204 F. 440.

Moreover, under the authorities cited, it would seem unnecessary that libelant ever in fact make the permanent repairs if it prefers to have its boat in her present condition. This choice, however, is for libelant and not claimant.

The exception of libelant, therefore, to this finding by the commissioner, should be sustained and the amount allowed at $1,214.

The other exceptions have been each considered, but, in my opinion, the findings of the commissioner are justified, and they are therefore overruled.

The report of the commissioner as modified above is approved.