## THE CATALINA.

## WILMINGTON TRANSP. CO. v. EDWARDS et al.

### No. 8601.

Circuit Court of Appeals, Ninth Circuit.

March 1, 1938.

284

Lillick, McHōse & Adams, James L. Adams, John C. McHose, and Edward R. Young, all of Los Angeles, Cal., for appellant.

Farnham P. Griffiths, of San Francisco, Cal., and Harold A. Black and McCutchen, Olney, Mannon & Greene, all of Los Angeles, Cal., for appellees.

Before DENMAN, STEPHENS, and HEALY, Circuit Judges.

DENMAN, Circuit Judge.

This is an appeal from a decree holding the steamship Catalina solely liable for a collision with the motorboat Arbutus occurring in a dense fog in the traffic way between San Pedro on the California coast and Catalina Island. The only question presented by the briefed assignments of error is whether the Catalina was solely at fault.

The collision occurred at about 5 p. m. o'clock in a fog in a visibility of a distance of between 100 and 150 yards when the vessels sighted one another. The Catalina, a 1,765 gross ton passenger steamship, 301 feet long, on a trip from Catalina to San Pedro admits liability because of her speed of fifteen knots when she sighted the Arbutus. The Catalina was unharmed, but the Arbutus was demolished.

While this admiralty appeal is a trial de novo, the presumption in favor of the findings of the District Court is at its strongest, since the trial judge heard all the witnesses, save one, and his deposition clearly sustains those heard. The Ernest H. Meyer, 1936, 9 Cir., 84 F.2d 496, 501; Silver Line et al. v. United States et al., 9 Cir., 94 F.2d 754, decided January 31, 1938.

The Catalina claims the following faults on the part of the Arbutus: (1) That the lookout on the Arbutus was (a) improperly stationed and (b) inattentive to his duties; (2) that the Arbutus either failed to sound

fog signals or her whistle was inefficient; (3) that the Arbutus was proceeding at an immoderate speed in fog; (4) that the master of the Arbutus was inattentive to his duties and did not navigate with caution.

 A. Concerning the station of the lookout, the Catalina relies on the criterion laid down in the Supreme Court in The Ottawa, 3 Wall. 268, 273, 18 L.Ed. 165, 167, holding that "Proper lookouts are competent persons other than the master and helmsman, properly stationed for that purpose, on the forward part of the vessel; and the pilot-house in the night time, especially if it is very dark, and the view is obstructed, is not the proper place."

The rule was stated in St. John v. Paine, 10 How. 557, 585, 13 L.Ed. 537, 550, as follows: "A competent and vigilant look-out stationed at the forward part of the vessel, and in a *position best adapted to descry vessels approaching at the earliest moment,* is indispensable to exempt the steamboat from blame in case of accident in the nighttime, while navigating waters on which it is accustomed to meet other water craft." (Italics supplied.)

From these cases it is argued that unless the station of the look-out is "as far forward as possible at the bow of the ship," his vessel is at fault. We do not so regard the maritime requirement. He must be in the "position best adapted to descry vessels approaching at the earliest moment." This may not be at, but away from, the extreme bow of such a vessel as the Arbutus, and the evidence in this case shows that the station as far forward as the lookout could possibly stand was not the position best "adapted to descry" approaching vessels.

The Arbutus was a 77-foot motorboat of a type of scores on our coasts. Her freeboard at her bow was low and her bulwark there less than a foot high. It is obvious that with this freeboard a very moderate swell might cross over her bow when the vessel is at moderate speed. In a moderate sea, as on that day, the testimony is uncontradicted that the spray came over the bow with its occasional eyefull of salt water for any one standing there. Besides, there was sufficient motion to require a lookout there to divide his attention looking forward with attention to his balance without any bulwark to lean against or hang onto.

The lookout testified he stood some 23 feet abaft of the stem, alongside the port forward end of the pilot house, holding on with his right hand to a convenient stanchion. This was in the "forward part" of the ship. We hold the lookout's station in the approach *to and at the time* of the collision was in the position "best adapted to descry vessels approaching at the earliest moment." ·

To hold otherwise would be to condemn literally thousands of low freeboard, small boats as unseaworthy, which common sense prevents.

██ Certain testimony, of an impeaching character, concerning later conversations with the captain and tending to contradict the captain's testimony as to the location of the lookout, was heard by the lower court and becomes a matter of credibility in which we accept the conclusions of that court. It was proper to exclude them as admissions of the owner, since they were made some days after the disaster when the master could not have been the agent of the owner to make admissions for him.

 B. With regard to the attention of the lookout to his duties, the Ariadne rule (The Ariadne, 13 Wall. 475, 20 L.Ed. 542, 543) requires the highest watchfulness, but this does not alter the burden of proof on the Catalina to establish that it was not exercised by the Arbutus' lookout. *When such proof is made,* certain adverse presumptions may arise as to its causative effect, but the proof of the lack of attentive watchfulness must come first.

The lookout was a qualified seaman. Two facts are offered to show his inattention in the approach to the collision. One was that he was ordered to wipe the spray off the pilot house windows. This, however, could not have been causative of the collision, because he had paid no attention to the windows after wiping them off some twenty minutes before the Catalina was sighted.

The other fact was that he did not at any time hear the whistle of the Catalina. No one else on the Arbutus did. The testimony clearly supports the finding of the lower court that the motors on the Arbutus, nor the exhaust, did not interfere with the lookout's hearing. The deflection of whistles in a fog so that they are heard at a greater distance but not nearby is too frequent a phenomenon for us to hold that the Catalina has sustained her burden of proof that this was not the reason her whistle was not heard on the Arbutus.

We agree that the Catalina has not maintained her burden of proof that there was

fault in the station or conduct of the Arbutus' lookout.

2. The Catalina has not maintained her burden of proof on the charge of failure of the Arbutus to sound fog signals, or that her whistle was inefficient. The testimony of her captain concerning the volume of sound, the condition of the whistle, and the air pressure supplying it, adequately disposes of the charge, and it is neither contradicted nor is there anything intrinsic in it which raises any doubt concerning it.

3. Nor has the Catalina's burden been maintained on the charge of excessive speed. Unlike many large vessels, she had repeatedly, when at moderate speed ahead in sword fishing, been put full astern. Her motor had a 100 per cent. efficiency on reverse. The record offers nothing to overcome the Arbutus' testimony that she could come to a stop under the prevailing conditions of speed and wind in 150 feet. The visibility from her to the large hull of the steamer was more than double this, though quite likely the much smaller Arbutus became visible to the Catalina at a lesser distance.

4. There is no evidence at all that the master was inattentive to his duties and did not navigate with caution. The fact that he did not hear the Catalina's whistle has already been commented on.

Since the Catalina has not maintained her burden of proof as to any of the claimed faults of the Arbutus, it is not necessary to consider this case under the major and minor fault rule of The City of New York, 147 U.S. 72, 13 S.Ct. 211, 37 L.Ed. 84.

The decree is affirmed.