## UNITED STATES v. MONSTAD et al.
### No. 10163.

Circuit Court of Appeals, Ninth Circuit.
March 26, 1943.

Francis M. Shea, Asst. Atty. Gen., Leo V. Silverstein, U. S. Atty., James L. Crawford and John Marvin Dean, Asst. U. S. Attys., all of Los Angeles, Cal., Esther B. Phillips, Asst. U. S. Atty., of San Francisco, Cal., and Allan B. Lutz, Atty., Dept. of Justice, of Washington, D. C., for appellant.

L. K. Vermille and Overton, Lyman & Plumb, all of Los Angeles, Cal., for appellees.

Before DENMAN and MATHEWS, Circuit Judges, and McCORMICK, District Judge.

DENMAN, Circuit Judge.

This is an appeal from a judgment of the district court denying to the United States recovery of a penalty against appellees, owners of the fishing barge Kohala, claimed by the Government to have been navigated without a certificate of inspection of the local inspectors of steamboats, required by 46 U.S.C. § 397, 46 U.S.C.A. § 397,[1] a certificate issued after the inspectors have satisfied themselves that the barge is of a "structure suitable" for her venture, here carrying fishing passengers and her crew, and that she is "in a condition" that makes her use in navigation "with safety to life."[2] The complaint also alleged that she was without any part of the equipment prescribed by 46 U.S.C. § 396, 46 U.S.C.A. § 396.[3]

---

[1] "§ 397. Certificate of inspection and equipment of barge required. A register, enrollment, or license shall not be issued or renewed by any collector or other officer of customs to any such barge unless at the time of issue or renewal such barge has in force the certificate of inspection prescribed by section 395 and on board the equipment prescribed by the preceding section. (May 28, 1908, c. 212, § 12, 35 Stat. 428; Mar. 4, 1915, c. 184, § 6, 38 Stat. 1218.)"

[2] "§ 395. Seagoing barges: certificates. The local inspectors of steamboats shall at least once in every year inspect the hull and equipment of every seagoing barge of one hundred gross tons or over, and shall satisfy themselves that such barge is of a structure suitable for the service in which she is to be employed, has suitable accommodations for the crew, and is in a condition to warrant the belief that she may be used in navigation with safety to life. They shall then issue a certificate of inspection in the manner and for the purposes prescribed in sections 399 and 400. (May 28, 1908, c. 212, § 10, 35 Stat. 428.)"

[3] "§ 396. Equipment of barges with life-saving appliances. Every such barge shall be equipped with the following appliances of kinds approved by the board of

It is stipulated that no certificate of inspection prescribed by § 395 of Title 46 U.S.C., 46 U.S.C.A. § 395, has been issued "with respect to the Kohala," and that she did not "satisfy" the inspectors with respect to "safety to life," without which satisfaction that statute prevents the issuance of the certificate.

The statute claimed to be violated is as follows (46 U.S.C. § 398, 46 U.S.C.A. § 398):

"§ 398. *Navigating barge without certificate or equipment prescribed.* If any such barge shall be navigated without such certificate of inspection, or without any part of the equipment prescribed by section 396, the owner shall be liable to a penalty of $500 for each offense. (May 28, 1908, c. 212, § 13, 35 Stat. 428.)"

The Kohala is a navigable seagoing barge, having been converted from a self-propelling vessel to a barge carrying fishermen, in that her means of self-propulsion and her superstructure, including masts and rigging, were removed, a deck house was erected to cover a restaurant, a pump installed, and to provide storage space for fishing tackle and other equipment, benches were built along the rail for the fishing passengers she carried, and a live bait tank was erected. That is to say, the barge retained her steering apparatus and her hull lines were those of any vessel made to meet the movement of the waves and currents against her while moored at wharf or at anchor or being towed, in which latter event she would be assisted by the use of her rudder.

The Kohala was anchored by two bow anchors and one stern anchor in the Bay of Santa Monica, approximately one mile west of Redondo Beach, California. She was then at sea. United States v. Newark Meadows Company, C.C., 173 F. 426, 428; United States v. Ross, 27 Fed.Cas. 899, 900, No. 16,196. As so anchored by her commander, she was enabled to rise and fall on the slack of her anchor chains with the rise and fall of the tide, and also within the slack of the chains to move from right to left through the water with the varying wind and tidal and other currents of the harbor. That Congress contemplated the regulation of passenger carrying barges appears from 46 U.S.C. § 490, 46 U.S.C.A. § 490, providing for "Every barge carrying passengers, * * *."

The vessel had been so anchored in the bay for a period of upwards of two years prior to the filing of appellant's complaint. To what extent she had gathered barnacles and other marine growth requiring her to be taken to shore for their removal does not appear. The court takes judicial notice of the fact that such fouling of the bottom would require such treatment. Also, should the barge leak beyond the control of her pump, she would have to be towed to shore for repairs. Obviously, a vessel so carrying passengers as much requires the statutory annual inspection of § 395, as any other seagoing vessel.

The size of the barge was upwards of 100 gross tons, capable of carrying the large numbers of fishermen using her arriving in boats operating from the shore and returning thereto in "about one-half hour."

The question before us is whether or not the Kohala, so carrying passengers on the high seas, was being "navigated" as under § 398 during the period she was moving in the currents on the slack of her anchor chains in the manner above described. We do not agree with the opinion of the district judge, who relied upon a definition in Webster's New International Dictionary, 2d Ed., for the meaning of the word "navigate."[4] We think she was navigated even within the definition of such a non-maritime publication.

supervising inspectors: At least one lifeboat, at least one anchor with suitable chain or cable, and at least one life preserver for each person on board. (May 28, 1908, c. 212, § 11, 35 Stat. 428.)"

[4] "Navigate," as defined in Webster's New International Dictionary, 2d ed., includes the following:

" (L. navigatus, past part. of navigare, v. t. & i., fr., navis ship + agers to move, direct * * *) Intransitive: 1. To journey by water; to go in a vessel; to sail or manage a vessel; to use the waters as a highway for commerce or communication; ply * * * 2. Hence, to direct one's course through any medium; to steer, especially to operate an airplane or airship.

"Transitive: 1. To pass over in vessels; to sail over or on; as, to navigate the Atlantic;—said also of vessels; by extension, to direct one's course through (any medium). 2. To steer, direct, or manage in sailing; to conduct; hence to operate, steer, control the course of (an airplane or airship)."

988

Here, within the dictionary definition, she was managed by those in command of the barge so that she was "directed" and "controlled" in the passing currents of the bay by her anchor chains, whether or not she was capable of being further guided in such moving currents by the use of her rudder in combination with the pull of the anchor chains. We do not believe that the word "navigate" should be confined to the moving of a vessel from one port to another for the purposes of transportation of goods or passengers. This vessel necessarily must have moved from one place to another in the water, under the control we have indicated above; that is to say, she necessarily moved her passengers across the ocean currents, and had a movement in them.

Not only was the vessel so moving in the water under the guidance and control of her anchor and chains, but the safety of the fisherman she carried and of the vessel herself might require at any moment that the anchor chains be slipped to avoid or ease a collision with a vessel approaching in the fog, or a derelict carried toward her by the current or wind with the likelihood of collision.

The appellees concede that if during the course of or at the end of a voyage a vessel is anchored or docked, she is nevertheless engaged in navigation. Indeed, appellees could not do otherwise in view of the great number of American and British decisions construing the word "navigated" under statute and otherwise, as including the movements of a vessel within the range of her moorings or anchor chains.[5]

What is done by those in command of a vessel while she is moored at the wharf of a dock, consists in the placing of her mooring lines so that she will give to the rise and fall of the tide, and to the surging caused by waves, and differs in management from that of the Kohala only in the matter of degree. We do not believe that the greater or lesser relative confinement of movement of the Kohala as she carried her fisherman in the passing currents, makes her operation there any the less navigation, than with a vessel moored at a wharf between voyages.

 Appellees invoke the familiar rule requiring a strict construction of statutes penal in their nature. Section 395, providing for the certificate of the inspectors, states its purpose to make barges navigable with reference to "safety to life." This failure to secure such a certificate is the penalized thing for which § 398 was enacted. Strictness of construction should not defeat the real objective of the statute. We hold that Congress intended to require such barges as the Kohala to have the inspectors' certificate as to her safety while so being navigated in her occupation of carrying fishermen at sea.

Reversed.

---

[5] United States v. Steamtug Union, 1932 A. M. C. 1331; The Idaho, D.C., 29 F. 187; Laurie v. Douglas, 15 M. & W. (Engl.) 746; Good v. London Ship Owners' Assn., 6 Common Pleas Cases 563; Zorn v. State, 45 App.Div. 103, 60 N.Y. S. 1037; Sayer v. State, 116 Misc. 644, 190 N.Y.S. 359; Hayn v. Culliford, 3 Common Pleas Div. (Engl.) 410; Locke v. State, 140 N.Y. 480, 35 N.E. 1076.