**CARR et al. v. HERMOSA AMUSEMENT CORPORATION, LIMITED, et al., and fourteen other cases.**

No. 10190.

Circuit Court of Appeals, Ninth Circuit.

October 18, 1943.

Lillick, Geary, McHose & Adams, Ira S. Lillick, and Kent A. Sawyer, all of Los Angeles, for appellants.

Alfred T. Cluff, of New York City, and Hugh B. Rotchford, George H. Moore, and Allan F. Bullard, all of Los Angeles, Cal., for appellees.

Before DENMAN, MATHEWS, and STEPHENS, Circuit Judges.

DENMAN, Circuit Judge.

Sterling Carr, as trustee in bankruptcy of Nippon Yusen Kabushiki Kaisya, a corporation, bankrupt, hereinafter called Nippon, and Fidelity & Deposit Company of Maryland, a corporation, appeal from a decree in admiralty holding Nippon solely in fault for a collision of its Japanese Motorship Sakito Maru, motoring toward Los Angeles Harbor, with the pleasure fishing barge Olympic II, owned by appellee, Hermosa Amusement Corporation, Ltd., a corporation, hereinafter called Hermosa, the Olympic being anchored at bow and stern while fishing at Horseshoe Kelp in the Pacific Ocean, approximately 3¼ nautical miles from the lighthouse on the west breakwater of Los Angeles Harbor, whereby the Olympic became a total

loss, several persons on her were drowned and personal effects lost.

**A.** *The Sakito's liability for the sinking of the Olympic.* The Sakito, crashing into the anchored Olympic, has the burden of overcoming the presumption that she was at fault and the Olympic not at fault in causing the Olympic's sinking.

In admiralty this presumption does more than merely require the Sakito's going forward and producing some evidence on the presumptive matter, as in civil suits. Cf. New York Life Insurance Co. v. Gamer, 303 U.S. 161, 171, 58 S.Ct. 500, 82 L.Ed. 726, 114 A.L.R. 1218. It places a "burden of proof" on the moving vessel "to show either that the steam-tug [the moving vessel] was without fault or that the collision was occasioned by the fault of the schooner [the anchored vessel], or that it was the result of inevitable accident." The Clarita and The Clara, 23 Wall. 1, 13, 23 L.Ed. 146, 150; The Oregon, 158 U.S. 186, 193, 15 S.Ct. 804, 39 L.Ed 943; United States v. King Coal Co., 9 Cir., 5 F.2d 780, 783. Here there is no evidence warranting a finding of inevitable accident.

All the crucial witnesses on both sides testified in open court, with the exception of the Sakito's first officer and lookout. Their testimony, given by deposition in advance of the trial, was in the main consistent with the story of the Sakito's master, who was heard by the court.

There is abundant testimony of these witnesses, heard by the trial court, from which that court could infer that Horseshoe Kelp is a customary and proper place for the anchorage of the fishing barge and that in no way did the Olympic cause an obstruction to the proper navigation of vessels approaching or leaving the harbor.

So far as concerns the Sakito's burden of proof of her charge that the Olympic's crew failed to give the proper signals in the existing fog conditions, and that the Olympic was not properly manned, the Olympic's crew's testimony and that of persons on nearby vessels was heard by the trial court and seems to us acceptable for sustaining even a burden of proof on the Olympic of her lack of fault. True, as to the signals, it is opposed in part by the depositions of the Sakito's lookout and mate, but there is nothing in the cold pages before us of *all* these witnesses which places us in a position to attempt to re-verse the decision of a court which had the opportunity of appraising the mental capacity, memory and veracity of so many witnesses. The Ernest H. Meyer, 9 Cir., 84 F.2d 496, 501. We sustain that court's decision and hold, not only has the Sakito not maintained her burden of proving fault in the conduct of the Olympic's crew but, that the latter is shown to be without fault contributing to the collision. Her failure in manning not contributing to the collision, is later considered.

Similar conditions apply to the burden of proof on the Sakito to show she was without fault in her navigation into the Olympic.

There is some dispute as to her speed, but the fact the scars on the Sakito show that she penetrated into the Olympic's iron frame and plates to her midship section for 23 feet of the latter's 38-foot beam, smashing in not only the latter's side plates and between decks but her bottom and keel, to us proves conclusively that the Sakito's navigator did not have the control over her which would enable her to be dead in the water in half the visible distance between her and the anchored Olympic. The Ernest H. Meyer, supra, 84 F.2d 497; The Silver Palm, 9 Cir., 94 F.2d 754, 757; The Catalina, 9 Cir., 95 F.2d 283, 286. It is possible there is an exception to the rule of these cases where there is a sudden change in visibility such as running into an extraordinary fog density from a much lighter fog area, but no such condition is shown here to aid the Sakito's burden of proof. We hold that the appellants are liable to appellee Hermosa for the total loss of the Olympic.

**B.** *The liability for the death, personal injury and personal property loss on the sinking of the Olympic.* The sinking of the Olympic caused the drowning of eight persons on her, injuries to others, and the loss of certain personal effects, for which libels in intervention and independent libels were filed claiming liability against both Nippon and Hermosa. The district court held the Sakito solely at fault for these losses and entered decrees awarding damages solely against Nippon. From these decrees Nippon has appealed but has failed to cite the claimants and has brought here Hermosa as the sole appellee in each. Nippon contends that Hermosa, if not solely at fault, causatively contributed to these losses.

Sakito's causative relation to the loss of life and personal effects is appar-

ent. The question remaining is whether Hermosa is also at fault, in which event one-half of Nippon's liability to the claimants for loss of life, personal injury and personal property must be shared by Hermosa. The Chattahoochee, 173 U.S. 540, 554, 555, 19 S.Ct. 491, 43 L.Ed. 801; Erie R. Co. v. Erie & Western Transporation Co., 204 U.S. 220, 226, 27 S.Ct. 246, 51 L. Ed. 450; Aktieselskabet Cuzco v. The Sucarseco, 294 U.S. 394, 401, 55 S.Ct. 467, 79 L.Ed. 942.

■ The Olympic was an ocean-going barge of over 100 tons. She was navigating the Pacific at the time she was carrying the pleasure fishermen and others at Horseshoe Kelp and hence required by the United States Code [1] to comply with the requirements of the United States local inspectors as to her structure and otherwise. United States v. Monstad, 9 Cir., 134 F.2d 986, 987.

The Los Angeles local inspectors had required of the Olympic and other pleasure fishing barges operating in the neighborhood of Los Angeles Harbor and within the control of these inspectors, that the annual thousands of fishermen they carry should be protected from the results of just such a collision as occurred here by having, inter alia, (1) the hull of each compartmented by sufficient water-tight transverse bulkheads to keep the vessel afloat if one of the compartments were flooded, and (2) a licensed master in charge, who could direct the life saving operations in the confusion arising from the struggle of the passengers to escape drowning.

The local inspectors' specific requirement regarding the licensed master was a "Minimum crew while vessel is at anchor with persons other than crew on board" of "1 licensed master * * *." There was no licensed master nor any licensed officer to assume instantly the direction and command of the saving of passengers in the event of such an emergency as caused by a collision. The total crew consisted of but an ordinary seaman, a watchman and a bait boy.

Section 222 of Title 46 U.S.C.A. provides that a vessel such as the Olympic, subject to the provisions of chapter 14, which in § 395 provides for the requirements of local inspection for the navigation of barges, shall not be navigated "* * * unless she shall have in her service and on board such complement of licensed officers * * *, as may in the judgment of the local inspectors who inspect the vessel be necessary for her *safe* navigation." Section 223 provides that no "ocean-going vessel carrying passengers * * * shall be navigated unless she shall have on board and in her service one duly licensed master."

Without such a master or any licensed officer as required by the local inspectors, the Olympic was being navigated in violation of a statutory requirement for the safety of life at sea, just as was The Denali, 9 Cir., 112 F.2d 952.

The Olympic was an ancient iron sailing vessel, 63 years old. She had but a single hold for her length from a collision bulkhead abaft her bow to her stern. For dec-

---

[1] 46 U.S.C.A. "§ 395. Seagoing barges; certificates. The local inspectors of steamboats shall at least once in every year inspect the hull and equipment of every seagoing barge of one hundred gross tons or over, and shall satisfy themselves that such barge is of a structure suitable for the service in which she is to be employed, has suitable accommodations for the crew, and is in a condition to warrant the belief that she may be used in navigation with safety to life. They shall then issue a certificate of inspection in the manner and for the purposes prescribed in sections 399 and 400. (May 28, 1908, c. 212, § 10, 35 Stat. 428.)

"§ 396. Equipment of barges with life-saving appliances. Every such barge shall be equipped with the following appliances of kinds approved by the board of supervising inspectors: At least one lifeboat, at least one anchor with suitable chain or cable, and at least one life

preserver for each person on board. (May 28, 1908, c. 212, § 11, 35 Stat. 428.)

"§ 397. Certificate of inspection and equipment of barge required. A register, enrollment, or license shall not be issued or renewed by any collector or other officer of customs to any such barge unless at the time of issue or renewal such barge has in force the certificate of inspection prescribed by section 395 and on board the equipment prescribed by the preceding section. (May 28, 1908, c. 212, § 12, 35 Stat. 428; Mar. 4, 1915, c. 184, § 6, 38 Stat. 1218.)

"§ 398. Navigating barge without certificate or equipment prescribed. If any such barge shall be navigated without such certificate of inspection, or without any part of the equipment prescribed by section 396, the owner shall be liable to a penalty of $500 for each offense. (May 28, 1908, c. 212, § 13, 35 Stat. 428.)"

ades such a single-hold vessel had been outmoded for the carrying of passengers on the high seas. The local inspectors' specific bulkhead requirement was "a sufficient number of transverse watertight bulkheads * * * fitted so that the vessel will remain afloat with positive stability in the event any one main compartment is flooded." The local supervising inspector approved the local inspectors' action. Hermosa appealed from the action of the local inspectors and supervising inspector and their action was sustained. On July 24, 1940, six weeks before the collision, the Director of the Bureau of Marine Inspection of the Department wrote Hermosa's representative,

"I have reviewed the requirements itemized in 'exhibit A' [including the bulkhead and the licensed master requirements] in their relation to their applicability to the Olympic II, permanently anchored as a non-self-propelled pleasure vessel on the high-seas, and am of the opinion that such requirements are reasonable and generally *necessary* to adequately ensure the safety and protection of the patronizing public.

"Since no specific requirement itemized in exhibit A is appealed, and as I am of the opinion that the requirements of the Local Inspectors are reasonable in view of the services in which the Olympic II is engaged, I am unable to find any reversible error in the actions of the Local Inspectors or the Supervising Inspector which actions are hereby sustained."

■ Here is an administrative function of a local matter which Congress had specifically delegated to the local inspectors. They and nobody else could perform it. Cf. Morgan v. United States, 298 U.S. 468, 481, 56 S.Ct. 906, 80 L.Ed. 1288. The specific delegation to the local inspectors is apart from the general delegation to the supervising inspectors of the making of the regulations of § 375. Congress gave to no one else the power of lessening the local inspection requirements or of permitting the operation of the vessel without satisfying them. We can see nothing arbitrary or irrational in requiring the bulkheads. On the contrary, it seems to us there was a wise exercise of the local inspectors' administrative function.

Hermosa did not install the bulkheads and failed to secure the local inspectors' certificate. Instead of withdrawing the Olympic, Hermosa continued to navigate the vessel, accepted the pleasure fishermen and exposed them to the danger from which the bulkhead requirement aimed to protect them.

The barge was prohibited by the penal § 398, supra, from navigating without the local inspectors' certificate, required, in the exercise of the inspectors' statutory function, to be issued only if the vessel had the additional bulkheading. We agree with the Sakito's contention that the Olympic's navigation is an additional violation of a statutory requirement because of the absence of the bulkheads. Cf. New York Marine No. 10, 2 Cir., 109 F.2d 564, 566. It is argued that the penalty of § 398 could not be enforced if, despite their requirement of the bulkheads, the inspectors nevertheless had issued the certificate. This argument ignores the presumption that the local inspectors would not have violated their statutory duty.

■ The district court, whose decree preceded our decision in the Monstad case, erred in holding that the Olympic was not under the jurisdiction of the local inspectors and that, even if so, the inspectors had no power to require the presence of the licensed master or the bulkheading.

■ Nippon contends that Hermosa's violations of the Congressional requirements, occurring at the moment of the drownings and personal injuries and loss of personal effects, place on Hermosa the burden of proving that the absence of the bulkheads and the master not only did not contribute but *"could not have contributed"* to the loss, under the rule of The Pennsylvania, 19 Wall. 125, 136, 22 L.Ed. 148; The Denali, 9 Cir., 112 F.2d 952; Lie v. San Francisco & Portland S. S. Co., 243 U.S. 291, 298, 37 S.Ct. 270, 61 L.Ed. 726. More recently the Second Circuit so decided a case involving the effect of violation of the local inspectors' requirements on the burden of proof. There the navigation of the vessel was prohibited (§ 222, 46 U.S.C.A.) unless it had a "complement of licensed officers and crew including certificated lifeboat men, separately stated, as may in the judgment of the local inspectors who inspect the vessel be necessary for her safe navigation." In that case the local inspectors required two deckhands on a tug. But one was employed and he failed to perform his duty in his station at the bow of the tug. In holding that the extreme burden of proof of the Pennsylvania rested on the tug owner, the Second Circuit stated: "Since the absence has been found, and the

lack is admitted to be a statutory fault, (see 46 U.S.C.A. §§ 222, 362 and 405) it is presumed that the fault is a contributory cause, and the petitioner must bear the burden of showing that it was not. The Pennsylvania, 19 Wall. 125, 136, 22 L.Ed. 148 * * *. This burden it has not met, for it is impossible to say that the other deckhand might not have been on duty instead of Costello on the morning of the collision, had there been two deckhands on board. * * *" The New York Marine No. 10, 109 F.2d 564, 566.

We agree that the Pennsylvania rule applies and that Hermosa has not sustained this heavy burden of proof. The Olympic sank in between three and four minutes. Hermosa's expert first testified that

"* * * I believe that, in the first place, if you strike a vessel that hard—I am still going to insist on hitting that is a hard blow, 23 feet—the decks would.fall down. That would be the first thing would happen; and the whole structure of the vessel would collapse and render those bulkheads asunder."

On cross-examination he admitted

"Q. With such water-tight bulkheads, such a barge would remain afloat much longer than it would without them, isn't that correct?

"A. That is right what I believe, Mr. Adams."

■ The Hermosa has not proved that her violations of the local inspectors' requirements could not have contributed and that if the Olympic had been navigated with the required bulkheads she could not have remained afloat long enough for all the people on board and the personal property on board to be safely removed; or that in the last precious minutes, a licensed master could not have so directed the struggle of the passengers into the life boats that some or all the drownings and injuries would have been prevented.

Apart from this burden of proof, it seems to us clear that Hermosa was negligent in exposing these pleasure fishermen in this ancient single-compartmented vessel, helplessly anchored in the vicinity of the heavy steamship travel in and out of Los Angeles Harbor, even though it was a customary and proper place for anchorage and in having her there without a licensed commander, and that such negligence contributed proximately in the causal chain leading to the damage inflicted on the claimants. We re-

garded the local inspectors' bulkhead requirement as convincing evidence from highly qualified experts, who had before them a blueprint of the Olympic's structure, that it was dangerous neglect so as to expose the fishermen passengers to the risk of collision. We agree with the statement of the Director of the Bureau of Marine Inspection and Navigation that the requirements were " * * * necessary to adequately ensure the safety and protection of the patronizing public." Cf. Walaas v. Johnson, 5 Cir., 204 F. 440; The John R. Penrose, D.C.E.D.Pa., 86 F. 696; The Viking, D.C.W.D.N.Y., 1932 A.M.C. 1159; The Smedley, D.C.S.D.N.Y., 216 F. 926.

■ Nippon contends that Hermosa's violations of such statutory requirements make Hermosa also in fault for the sinking of the Olympic and that there should be a division of damages for her loss. We do not agree. The bulkhead requirement was for the protection of lives after such an occurrence as a collision, not for the prevention of collisions.

■ The only thing a master could have done with reference to the collision relates to the giving of signals or the manipulation of the Olympic moorings. We have held that the signals were properly given. In view of the speed and momentum of the Sakito and the required reliance of a master on the Olympic in the performance of the Sakito's obligation to change her course to one side or the other of the Olympic, no attempt of the latter, in extremis, to alter her position by shifting or releasing the heavy permanent moorings could have prevented the collision.

We hold Hermosa liable to Nippon for half the liability of Nippon to the claimants for the loss of life, personal injuries, and for personal property.

■ It is apparent that such claimants have no interest in the above issues between Nippon and Hermosa. Nippon did not summons these claimants to appear in this court and Hermosa has moved the dismissal of Nippon's appeal because there was no summons of the other claimants for their appearance or severance from the appeal. Obviously, since none of the claimants has any interest in this liability of Hermosa to Nippon, there was no obligation to summons them so far as concerns that issue.

None of the claimants appealed from the district court's decision that Hermosa

was not liable to them. Quite likely this is because they were satisfied with the stipulation for the value of the Sakito, given in her release, and did not wish to incur the expense of the appeal. However, since if summoned they would have been either adverse parties to Hermosa or, if severed, no parties at all, Hermosa is not prejudiced by the failure to summons them. The motion to dismiss the appeal is denied.

The decree holding that Nippon is liable in full to Hermosa for the loss of the Olympic is affirmed in that holding. In so far as that decree and the decrees in favor of the claimants for damages for loss of life, injury to persons and property and loss of property hold that Hermosa is not liable for one-half of the liability of Nippon for such damages, they are reversed. The cause is remanded for the determination of the amounts of Hermosa's and Nippon's liabilities to each other.

Affirmed in part and reversed in part.