## LARSSON v. COASTWISE (PACIFIC FAR EAST) LINE.

No. 12,313.

United States Court of Appeals Ninth Circuit.

March 22, 1950.

Rehearing Denied April 14, 1950.

Far East) Line, for injuries sustained while on board the S.S. Justo Arosemena, as a member of its crew on October 5, 1947, while the vessel was moored in the harbor at Shanghai, China. Appellant asked, in one cause of libel, for general damages and special damages, and in a second cause of libel, sought maintenance and cure. At the time of the injury, the vessel was owned by the United States of America, and operated, managed, maintained, and navigated by respondent, Coastwise Line, under Bareboat charter. Coastwise Line had, in turn, entered into a per diem charter party with the Board of Supplies, Executive Yuan, of the Republic of China, an independent contractor. Larsson was injured while he was oiling a winch which was negligently thrown into operation by a Chinese stevedore in the employ of the aforementioned Board of Supplies. The government was originally joined as a respondent, but, subsequently, dismissed at the trial. The district court dismissed appellant's first cause of libel, awarded him an allowance for maintenance and cure on the second cause of libel, and directed that each party pay his own costs. From the judgment, Larsson appeals.

Appellant contends that the ship was unseaworthy because of the existence of an unsafe place to work, created by the incompetence of Chinese stevedores, and that the shipowner was liable for the damages resulting from his injury, regardless of any actual negligence on its part; that apart from the question of unseaworthiness, the shipowner could not delegate the duty of providing a safe place to work and was, accordingly, because of the employment of incompetent stevedores, liable in this case; that the shipowner had knowledge of the fact that the place appellant was working was unsafe because of the negligence of Chinese stevedores; that it took no steps to eliminate this condition; and that it was, therefore, actually negligent and liable for damages caused by the negligence of the Chinese winch driver, who commenced operation of the winch while appellant was oiling it.

---

Roos & Jennings, Leslie L. Roos, San Francisco, Cal., for appellant.

John H. Black, Edward R. Kay and Henry W. Schaldach, San Francisco, Cal., for appellee.

Before HEALY, McALLISTER,* and ORR, Circuit Judges.

McALLISTER, Circuit Judge.

Appellant, Gunnar Larsson, a merchant seaman, filed a libel in personam, seeking damages from the respondents, United States of America and Coastwise (Pacific

* Sixth Circuit, sitting by special designation.

■ There is no question that a shipowner is obliged to furnish a seaman a safe place to work, and that this duty is not delegable. Seas Shipping Co., Inc. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099. The shipowner's responsibility to furnish a safe place continues through any hazard created by stevedores in loading the cargo and engaged by the owners for that purpose. Shields et al. v. United States, 3 Cir., 175 F.2d 743; and this responsibility can not be avoided by delegating it to others. Seas Shipping Co., Inc. v. Sieracki, supra.

In support of his contentions with respect to the incompetence and negligence of the stevedores, appellant introduced evidence that on a prior trip, difficulties had occurred with such Chinese workers, and that on the voyage during which appellant was injured, a member of the crew had similar trouble with another Chinese winch operator the night before the accident in which appellant was injured; but there was no proof of any prior negligent conduct on the part of the winch operator that caused the injury in this case, nor was there any evidence sufficient to justify a finding that all Chinese stevedores are negligent, or that it was foreseeable that the particular stevedore who caused the injury in this case would prove to be incompetent.

The crucial fact in the case, however, is that each winch on the ship was equipped with a shut-off valve; that the oiler, by means of the valve, could close and cut off the steam to the winch; and that by cutting off the steam, the winch would be rendered immovable and absolutely safe to everyone. It is the contention of appellee, therefore, that the injury to appellant resulted from his failure to use the simple safety precaution of cutting off the steam from the winch valve before proceeding to oil the winch.

Shields et al. v. United States, 3 Cir., 175 F.2d 743, 744, certiorari denied 338 U.S. 899, 70 S.Ct. 249, was a case with facts almost identical to those in the instant case. Shields was a seaman employed as an oiler aboard a ship docked at Philadelphia. While Shields was engaged in oiling a winch, the stevedore operator of the winch prematurely started it, and badly injured Shields' hands. In an action against the shipowner, Shields claimed that the owner had violated its duty in allowing work to be done in a dangerous fashion, and in failing to provide a safe place. From an adverse judgment in the district court, Shields appealed. In affirming the judgment, the court of appeals agreed that the shipowner's responsibility to furnish a safe place for the crew continued through any hazard created by longshoremen in loading the cargo, and that the method employed by the stevedores in operating the winches, "if considered by itself," might well be thought dangerous to Shields in his job. The court, however, observed that the difficulty with appellant's contention was that each winch on the deck of the ship had a valve controlling the steam which powered the motor; that appellant knew that shutting off the steam by turning the valve would put the winch out of operation; and that he knew he had the right to shut off the steam, if necessary, in order to oil the winch. The court said: "He did not shut off the steam to the forward port winch, the one which hurt him, prior to oiling it. Fifteen minutes prior to the accident, the operator of the starboard winch at Shields' direction, had shut off the power while Shields oiled it. In the situation we think it obvious that the district judge was correct in concluding that: '3. The respondent did not fail in any duty to supply a safe place for the libellant to work. The method of operating the winch adopted by the longshoreman did not render the place where Shields was working unsafe nor make it dangerous for him to oil the winch, so as to place any liability in respect of it upon the respondent.' "

■ Appellant in this case was a seaman with nineteen years of sea experience, and the holder of a Swedish engineer's license. He had sailed for three years on American ships, on which one of the duties of an oiler is to oil and grease winches; and he had performed the operation thousands of times. Each of the winches on appellee's ship was, as has been said, equipped with an individual steam shut-off valve. There was evidence from which the trial court

could find that the safe and usual way to oil a winch was to close the steam valve. The district court found that appellant knew about the shut-off valve on the winch, and, being a man of experience, must have known that by its use, his job of oiling the winch would be rendered absolutely safe. The court held that, under the foregoing circumstances, appellee could not be held to be negligent, merely because it did not order appellant to use the valve. While an admiralty appeal is a trial *de novo,* "the presumption in favor of the findings of the District Court is at its strongest, since the trial judge heard all the witnesses." The Catalina, 9 Cir., 95 F.2d 283, 284.

From a review of the record, it is our conclusion that the findings of the district court that appellee owner was free from negligence are sustained by the evidence. Moreover, there was no evidence to sustain the claim that the ship was unseaworthy or that there was failure to supply a safe place for appellant to work so as to place any liability in respect of the winch operation upon the shipowner.

The decree of the district court is affirmed.