EVICH et al. v. THE SANTA LUCIA et al.
No. 10156-Y.

United States District Court
S. D. California, Central Division.
Dec. 29, 1950.

Stephenson, Real & Karmelich, San Pedro, Cal., for the libelant.

Allan F. Bullard, San Pedro, Cal.. for the respondents and cross-libelants.

YANKWICH, District Judge.

The above-entitled cause, heretofore tried, argued and submitted, is now decided as follows:

The Court, having reached the conclusion that the damages caused by reason of collision between the vessel Clermont, owned by libelants and The Santa Lucia, owned by cross libelants, on April 4, 1949, was caused by mutual fault, it is ordered that an interlocutory decree be entered that both vessels were at fault and that the damages arising therefrom by reason of the physical damage to the vessels and the detention of the respective vessels while under repair be divided and apportioned.

The matter is referred to Leslie S. Bowden, Esq., with direction to ascertain and compute the damages sustained by libelants and cross libelants and to make findings thereon, as to which the libelants and cross libelants have agreed in open court, and as a condition of such reference, that no exceptions should be taken by either side.

Each side will bear its own costs. Counsel for the libelants will prepare findings and interlocutory decree according to Local Rule 7.

## Comment

Libel and cross libel for damages resulting from collision on April 4, 1949, south of the entrance to the Los Angeles Harbor Breakwater, during calm weather, but in a fog, between two commercial fishing vessels, The Clermont and The Santa Lucia, of the burden of 75 tons gross each.

A consideration of the evidence in the case leads to the conclusion that the collision and injury was caused by mutual fault. Because of the suddenness of the collision, we are confronted with more than the usual conflict which arises in cases of this character. See, The Stella Di Genova, D.C.Cal.1948, 78 F.Supp. 33, 1948 A.M.C. 486. And the crew of each is blaming the other for practically the same violations,— failure to have a proper lookout, excessive speed in fog, in violation of Articles 15 and 16 of the International Rules. 33 U.S.C.A. §§ 91, 92. Indeed, The Clermont charges The Santa Lucia with what, if true, would amount to most culpable fault,—the actual desertion of the steering wheel by the crew. In fairness to The Santa Lucia, it should be stated that the evidence fails to support the charge. As the collision seemed imminent, two of The Santa Lucia's crew, who were standing in the bow of the ship, moved backwards. It can be seen readily how the crew of The Clermont, which sped away from The Santa Lucia immediately after the collision, may have mistaken this movement for a desertion of the post by the entire crew. At any rate, I am of the view that the navigator of The Santa Lucia was at his post prior to and at the time of the collision.

But, while both vessels had lookouts, the conclusion is inescapable that, although they heard the signals given by each other, the lookouts of neither vessel warned the others of the crew of the impending collision. Whatever action was taken seems to have been taken by the navigators at the last moment, when, from their own observation, they saw danger ahead. So there is fault in this respect on the part of both vessels. See, The Catalina, D.C.Cal.1937, 18 F. Supp. 461, 466–467. But an even more serious fault lies in the fact that the vessels were traveling in the fog and that they both exceeded the moderate speed called for under the circumstances. See, The Catalina, supra, 18 F.Supp. at pages 464–466. It is undeniable that The Clermont first sighted The Santa Lucia through the fog 100 feet ahead. She was doing one or one and one-half knots per hour. The distance was great enough to cause her to reverse her engines and come to a dead stop,—in which event the collision would have been avoided.

Instead, she increased her speed to about seven knots in the hope of passing the bow of The Santa Lucia. Her disappearance into the fog after the collision testifies to her high speed just before or at the time of the collision. By the same token, however, The Santa Lucia was also at fault in that respect. Regardless of any question of way arising from the position of the vessels, International rules, Art. 19, 33 U.S.C.A. § 104, and the application of the "starboard hand crossing rule", The Santa Lucia was required to observe the rule which was stated by the Court of Appeals for the Ninth Circuit in a leading case: "One of the very long-established principles of law in maritime navigation is that a vessel shall not proceed in a fog at a speed at which she cannot be stopped dead in the water in one-half the visibility before her." The Silver Palm, 9 Cir., 1937, 94 F.2d 754, 757. See, Carr v. Hermosa Amusement Corporation Ltd, 9 Cir., 1943, 137 F.2d 983, 985.

And see, Union S.S. Co. v. Standard Oil Co., D.C.Wash.1945, 60 F.Supp. 538. While she reversed her engines, it is evident from the testimony of her own crew, and mathematically demonstrable, that she did not succeed in stopping within one-half of the visibility before her. This is evidence of excessive speed and was a fault and a contributory cause to the collision. See, Sawyer v. McDonald, 5 Cir., 1948, 165 F.2d 426, 430.

Hence the ruling above made.