Mr. Justice NELSON
 

 delivered the opinion of the court.
 

 This is an appeal from a decree of the Circuit Court of the United States for the eastern district of the State of Louisiana, sitting in admiralty.
 

 The libel was filed in the District Court to recover the value of a quantity of merchandise on board the schooner Ella, which was sunk in a collision with the steamer on Lake Borgne, some six or eight miles east of the light-ship-in Pass Mary Aim, while at anchor on the night of the 5th February, 1853. The District Court rendered a decree charging the steamer with the loss.
 

 On an .appeal, the Circuit Court reversed the decree, and dismissed the libel, on the ground that the schooner was in fault in not having a light in the fore-rigging, or in any other conspicuous place on the vessel, to give notice of her position to the approaching steamer.
 

 The night was dark and rainy, and the wind blowing fresh' from north-northwest. A proper light had been hung in the fore-rigging early m the evening, and kept there till near the
 
 *110
 
 time of the collision,' which happened about half-past eleven o’clock. . One of the hands had taken the lamp down to wipe off the water that had collected upon the glass globe, so that it might shine brighter. While he was standing midships, wiping the lamp, he heard the approach of the steamer, and immediately placed it on the top of the cook-house. The collision soon, after occurred. The fault lies in removing the lamp for a moment from the fore-rigging to midships'. If it was not practicable to wipe it in the rigging, another light should have been placed there on its removal. The time of the removal may be, as happened in this case, the instant when the presence of the light was most needed to give warning to the vessel approaching. All the hands examined who were on board the steamer deny that they saw any light at the time on the schooner.
 

 We agree, therefore, with the court below, that the schooner was in fault.
 

 But it is insisted, on the part of the appellants, that the steamer was also in fault on account of her rate of speed at the time, regard being had to the darkness of- the night and the character of the channel she was navigating. The schooner, on coming out of the Pass Mary Ann, towards evening met a strong head wind and swell of the lake, and after pursuing her course some four or five miles, anchored under Cat Island. There were several other vessels at anchor at the time in that vicinity.
 

 Some of the witnesses state that the place is used as a harbor for schooners and other vessels navigating the lake in rough weather, as it is somewhat sheltered from the winds; and the number of vessels at anchor in the neighborhood, at the time of the collision, would seem to confirm this statement, and there is no evidence in the case to the contrary.
 

 There is conflicting evidence on a point made by the appellant, that the steamer was out of the direct and usual course of steamers from Pass Mary Ann to Mobile. The weight of it is, that this course was a mile and a half or two miles north of the place where the schooner lay. But we do not attach much influence to this fact, as in the open lake there was no very fixed track of these vessels within the limit mentioned.
 

 There is also some little discrepancy of the witnesses as to the darkness of the night. But the clear weight of it is, that at the time of the collision it was very dark and rainy, and the wind blowing fresh.
 

 The witnesses on the part of the steamer are very explicit on this part of the case. The pilot says, the night was very dark,, and drizzling rain. The captain, that the night was
 
 *111
 
 dark and cloudy, and tbe wind blowing briskly. Tbe engineer, (tbat-tbe nigbt was so dark, a vessel of tbe size 'of the schooner could' not be seen at all till upon ber, without a light; and yet be says there was nothing in tbe weather to prevent ber running at ber usual speed.
 

 Tbe steamer was going, at tbe time of tbe collision, at tbe rate of from nine to ten miles an hour. Tbe pilot says, at ber usual rate of speed, or at tbe rate of eight or nine knots. Tbe engineer, not exceeding the usual rate of speed, which, it appears, averages about ten miles. Tbe mate states, that the speed at tbe time was- between ten and eleven miles.
 

 Now, considering tbe darkness of the nigbt and state of tbe weather, and that tbe steamer was navigating a channel where she was accustomed to meet sailing vessels engaged in tbe coasting trade between Mobile and New Orleans and tbe intermediate ports, we' cannot resist the conclusion that tbe rate of speed above stated was too great for prudent and safe navigation; and this,- whether we regard tbe security of tbe passengers on board of ber, or tbe reasonable protection of other vessels navigating the same channel; and especially under tbe circumstances of this case, in which she was bound to know that tbe place where this schooner lay was a place to which vessels in rough and unpropitious weather, navigating this channel, were accustomed to resort for, safety. Tbe case presented is much stronger against tbe steamer than that of casually meeting tbe schooner in tbe open waters "of tbe lake. She-was at anchor with other véssels in an accustomed place of security and protection .against adverse winds and weather, familiar to all persons engaged in. navigating these waters. Tbe place and weather, therefore, should have admonished tbe steamer- tq extreme care ; and caution, and it is, perhaps, nqt too much -to say, should have led to the adoption of a course, that would' have avoided tbe locality altogether. Tbe weight of tbe evidence is, even if she bad pursued tbe -most direct, course from Pass Mary Ann to Mobile,- it would have bad this effect: she would have passed north of this cluster of vessels anchored under tbe shelter of the island.
 

 Neither is it at all improbable, if the speed of the steadier had been slackened, and she bad been moving at a reduced, rate, with the cafe and caution required by tbe state of the weather, that, she would have seen tbe light on the, schooner, in time to have avoided ber., The proof is full that there was a light on board from tbe time she cast anchbr till the happening of tbe disaster.. But, at tbe critical moment, it was in the band of tbe seaman at midships, instead of at a conspicuous place,in tbe rigging. The light must have been in some die-
 
 *112
 
 gree visible, as all tb¿ sails of tlie vessel were furled, and was placed on the top of the cook-house as soon as the wet and moisture were wiped from the glass.
 

 The admiralty in England have repeatedly condemned vessels holding a rate of speed in a dark night, under circumstances like the present, and so did this court in the case of the steamer New Jersey, (10 How., 568.) The Rose, 2 Wm. Rob., 1; The Virgil, Ib., 201.
 

 It has been'urged, on behalf of the steamer,-that she' carried the mail, and that a given rate of speed was necessary in order to fulfil her contract with the Government.'
 

 . This defence has been urged in similar and analogous cases in England, but has been disregarded, and indeed must be, unless we regard the interest and convenience - of the arrival of an early mail more important than the reasonable protection of the lives and property of our citizens.
 

 Having arrived, at the conclusion that the steamer was in fault, the ease is one for the .apportionment of the loss. .
 

 -The decree must therefore be' reversed, and the case remitted to the court below, for the purpose of carrying this apportionment into effect. 1
 

 Poole, Nicoll, & Co.,
 
 v.
 
 The Steamer St. Charles.
 

 . The decree of the court below is reversed, for the reasons - given in the case bf E. G. Rogers &;C,o.
 
 v.
 
 the same steamer,' and remitted to the court for an apportionment of .the loss.
 

 Brooks & Randolph v.
 
 T
 
 he Steamer St. Charles.
 

 The appeal in this case is dismissed for want of'jurisdiction; the decree in the court below being for-a .sum less than $2,000.
 

 John Hurley & Co. v
 
 .
 
 The Steamer St. Charles.
 

 The appeal is dismissed for want-óf jurisdictioh; the decree of the court below being for a sum .less than $2,000.. .
 

 Orderf,
 

 This cause came on to be heard on the transcript of the, record from the Circuit Court of the United States for the eastern diétrict of. Louisiana, and" was argued by counsel.' rOn ■ consideration whereof, it -is the opinion of this court that the, Appeals of Brooks & Randolph, and Hurley & Co., should.be
 
 *113
 
 ■dismissed for the want of jurisdiction, on the ground that the amount in controversy in eacla of the said eases is less than $2,000; and-it is also the opinion of this court that the steamer St. Charles was in fault, and that the decree of the said Circuit Court in the cases of E. G-. Rogers & Co., and Pooley, NicóH, & Co., should be reversed, and the cause remanded for an apportionment of the loss on these'two appeals. Whereupon, it is now here ordered, adjudged, and decreed,'by this court, that the appeals of Brooks & Randolph, and of Hurley & Co., be and the same are hereby dismissed forlhe want'of jurisdiction; and that the decréee of the said .Circuit Court in the cases of E. G. Rogers & Co., and Pooley, Nicoll, & Co., be and the •same.are hereby reversed with costs;.and that this cause be and the same is hereby remanded to the said Circuit Court for ¡further proceedings- to be had therein in conformity to the . Opinion of this court, and as to law and justice shall appertain.