Choate, D. J.
This is a libel to recover damages sustained by the schooner Bobert Smith, and her cargo, by a collision with the schooner Albert Mason, in the harbor of New Haven, on the evening of the eighth day of November, 1877. The Bobert Smith was bound on a voyage from Portland, Connecticut, to New York, with a cargo of about 90 tons of brown stone. Between 6 and 7 o’clock she put into New Haven for a harbor, the wind being S. S. E. to S. E., and blowing hard. She came to anchor about two miles inside the light, on the west side of the channel, as the libel states, in about eight feet of water, at low tide. When she came in it was the last of the ebb.
Between 8 and 10 o’clock the Albert Mason also came in for a harbor. She intended also to come to anchor on the west side of the channel, and in fact proceeded directly towards where the Bobert Smith was lying at anchor, and to within a very short distance from her, when she undertook to round to for the purpose of anchoring, and just then her stern grounded. Before this she had taken in her jib and mainsail, under which she entered the harbor. Up to the time of so rounding to those on board of her had not seen the Bobert Smith. To work off the bottom she hoisted the peak of her mainsail, intending to work off more to the eastward. While doing this her master and others of her crew discovered something to leeward, and very near to them, which was in fact the Bobert Smith, but which, as they say, they took for a wreck or a sunken canal-boat. They approached it a little *822 nearer, as they worked a little further to the eastward, still being aground, but rising and 'moving with the rise and fall of the sea. 'They then discovered that this object was a vessel, and that if they kept on as they were going they were likely to come into collision with it, and they let go their starboard anchor. As the vessel was brought up by her anchor she gradually approached the Eobert Smith, and her bowsprit and head rigging came foul of the .fore rigging of the Eobert Smith, and finally she swung along-side of the Eobert Smith, and was got clear of her by paying out chain, so that she drifted astern of her. But in going by her stern the injury was done which is the subject of this action, and from the effect of which it is claimed that the Eobert Smith leaked so badly that she was. obliged to slip her cable and go ashore, where she became a total wreck.
The libel avers that immediately after the Eobert Smith Anchored a signal light was hung in the fore rigging, on the starboard side, and a proper watch' placed on deck, and “that from the time said signal light was lighted and watch set to, and until the collision, the said signal light was in its proper place and burning brightly.” The answer denies that the Eobert Smith had any anchor light, and charges the absence of the light on her part as the cause of the collision. The only question fairly arising on the pleadings and the evidence is whether the Eobert Smith had an anchor light set and burning as the Albert Mason came into the harbor and approached her. Though it was a dark and stormy night, lights of vessels could be seen at a considerable distance, and if the Eobert Smith had her light set it was inexcusable in the Albert Mason to approach her so closely as she did before rounding to, to anchor.
The point made that the Eobert Smith was in fault in not hoisting her jib and paying off to the eastward, so as to aid the Albert Mason in her efforts to avoid the collision, is not, I think, open under the pleadings. There can be no question that it was the duty of the Eobert Smith to have a light. She was not fairly out of the channel or that part of the harbor *823 where other vessels were likely to come, and the burden is on her to show by a fair preponderance of evidence that she had a light. Her crew consisted of four men, all told, who swear positively to the light being set after they came to anchor, and to its continuing to burn brightly afterwards up to the time of the collision. Three of them say it was taken down after the Albert Mason had let go her anchor. They do not quite agree as to the time when it was taken down, but the three swear it was not taken down till after the bowsprit of the Albert Mason came into contact with the fore rigging of the Eobert Smith. On the other hand, five witnesses are called from the Albert Mason who swear positively that after this object was discovered to leeward they looked for a light, and that she had no light visible to them; yet, if it was hung in the starboard fore rigging, as testified to by those on board the Eobert Smith, it must have been plainly visible to all those on the Albert Mason, and at a distance of from 100 to 300 feet, which was being constantly diminished until the two vessels came in contact.
It is impossible to reconcile the testimony upon any theory of mistake. Nor is the theory of inattention or failure of those on board the Albert Mason to observe a light, which they might have seen if they had looked, tenable in this case. The vessel lay in this close proximity a considerable time, and the light which they looked for and did not see, if it was there, was very near to them, and on the side of the vessel towards them. While there are some serious discrepancies between the testimony of those on the Eobert Smith and the other and credible proofs in the case as to the movements of the Albert Mason and the sail she carried, and some inconsistencies in their testimony, and between it and the averments of the libel, these alone would not be sufficient to impeach or discredit the witnesses of the libellant. Nor, on the other hand, are the witnesses for the claimants in any way discredited except by this flat contradiction in respect to the light. In fact, the witnesses on both sides appear to be alike credible, and I have not been able, after the most careful *824 study of the testimony, with the aid of the able arguments and briefs of counsel, to come to any reasonably certain conclusion as to which of these two classes of witnesses tells the truth in respect to this light. I think neither can he mistaken, therefore I am obliged to hold that the libellants have not sustained the burden of proof which is upon them to show that they had a light.
Libel dismissed, with costs.