## THE ISAAC BELL.

*(District Court, S. D. New York.    December 22, 1881.)*

1. COLLISION—ANCHOR LIGHT—RIVER NAVIGATION.

   Vessels at anchor at night in the vicinity of the navigable part of a river are bound to maintain an anchor light.

   The schooner G. S. R. anchored at sun-down in the James river, near the White Shoal light. The river is there about four miles wide. The White Shoal is in the middle of the river. The usual channel, with from 26 to 16 feet of water, is about half a mile in breadth along the southerly side of the shoal. The place of anchorage was claimed to be outside of the channel, in about 15 feet of water only; but the various estimates of distance from the light and com-

pass bearings therefrom would bring the schooner more in the channel. The A., another schooner, anchored nearly abreast of the G. S. R., but one or two hundred yards nearer to the southerly shore. The steamer N., coming down the river at 11 P. M., passed about 50 yards to the north of the schooner G. S. R., on which no light was seen, the light of the schooner A. being visible. The night was cloudy and dark, but not thick. At 2 A. M. the steamer I. B., whose usual course is a little to the southerly of the N.'s course, came down the river, having the A.'s light a little on her starboard bow. When near her, the I. B. veered to port to avoid the A., and in doing so immediately ran upon the schooner G. S. R., no light being seen upon the latter. No anchor watch was kept upon either schooner. The usual anchor light was set on the G. S. R. on the evening before.

*Held*, upon a conflict of testimony as to whether the schooners were in or far out of the channel, that the schooner G. S. R. was in or so near the navigable part of the river that she was bound to maintain the usual anchor light; that she had not done so, and that the collision was to be solely attributed to that fault on her part; that the I. B. was not so far out of her rightful course as to make her answerable for the collision, in the absence of a proper light upon the schooner.

Whether the schooner was also bound to keep an anchor watch, or exhibit a torch-light to the approaching steamer, under section 4234, *quære.*

In Admiralty.

*E. D. McCarthy*, for libellant.

*Owen & Gray*, for claimant.

BROWN, D. J. This libel was filed by the owner of the schooner George S. Repplier, to recover damages caused by the steamer Isaac Bell running into her as she lay at anchor in the James river, about 2 o'clock in the morning of August 18, 1879. The place of the collision was several miles above Newport News, nearly abreast of the White Shoal light. The river at this point is from three to four miles wide, running in a south-easterly course. The White Shoal is a narrow bank, about a mile in length, running in the same course with the river, and about midway from shore to shore. The White Shoal light is situated upon its southerly edge. The main channel runs along the southerly side of this shoal, and is nearly half a mile in breadth, with a depth of water varying from 26 to 16 feet. The deeper portion is nearer to the White Shoal. On the southerly side of this channel the water becomes gradually shallower, and at a distance of half a mile abreast of the light is 15 feet in depth, and thence shoals gradually to the southerly shore, about a mile and a quarter further distant. These shoals furnish a favorite anchorage ground for light-draught vessels.

At about 6 o'clock in the evening of August 17th, the George S. Repplier, bound from Richmond to Philadelphia with a cargo of paving stones, came to anchor at a point a little below the light, and

at a distance from it variously estimated in the testimony from a quarter of a mile to a mile. Shortly before, the schooner Alexandria, also bound down the river, had come to anchor at a point a little below the Repplier, and from 100 to 200 yards nearer to the southerly shore. The night was dark, but neither foggy nor thick. The Repplier had on board the captain, a mate, and a colored lad acting as steward. No watch was kept during the night, but before going to bed they set the usual light in the fore-rigging, about eight feet above deck, and the Alexandria had a similar light.

The Isaac Bell belongs to the Old Dominion line of steamships, running from Richmond to New York. On that evening she came down the river upon one of her regular trips, and, some time before reaching the White Shoal light, sighted the light of the Alexandria, as well as the White Shoal light. She proceeded in her usual course, S. E. by E., keeping the light of the Alexandria a little off her starboard bow. As she approached this light her wheel was put to starboard, and a few moments afterwards she ran upon the Repplier, her paddle-box upon the port side, carrying away the bowsprit and rigging of the schooner, sweeping along her side, and causing such injury that in a few hours afterwards she sank. No light was seen upon the Repplier, prior to this collision, by those on board the Isaac Bell. The pilot and wheelsman were in the pilot-house at the time, and the lookout at the bow. They all testify that no light was visible upon the Repplier, and that she was not perceived at all until just before the collision, shortly after veering to port to avoid the Alexandria. No person was awake on board the Alexandria or the Repplier at the time of the collision, unless the testimony of the colored lad, that he was on deck at the time, is to be credited.

A few hours before, at about 11 o'clock at night, the steamer Norfolk, of the Clyde line, had also gone down the river upon one of her regular trips, and nearly in the same track. Her captain testified that his course is usually somewhat nearer to the White Shoal light than that of the Isaac Bell, and that he saw the light of the Alexandria; that he passed from 40 to 50 yards inside of the Repplier, and near enough to distinguish her, and that she had no light then burning; that he "took particular notice, and if there had been a light he would certainly have seen it." The pilot, the quartermaster who was at the wheel, and the lookout of the Isaac Bell, all of whom were obviously attending to their duties at the time, testify to the same thing. They saw the light of the Alexandria long before. She was properly avoided, and there is no reason to suppose if the

Repplier had also had her proper light at that time burning it would not have been seen and the collision avoided.

The only witness on the part of the libellant to the contrary is the colored lad, Roy. He testifies that at 3 : 30 A. M., and about half an hour before the collision, he heard a sort of roaring, which woke him up, and that he then went forward in the schooner; that he next attended to his fire, then went back and remained watching the approaching steamer and seeing her red light only; that he apprehended no collision; that he did not call the captain, because it was not his business to call him, and that he did not hail the steamer or exhibit any torch. He testifies that the light which he had set the evening before was at this time still burning brightly. One of the witnesses testified that Roy had stated the morning after the collision that he was asleep at the time. His manner upon the stand was peculiar, and his answers to every question were given with a deliberation and delay altogether unexampled. His quickness of apprehension, exhibited in other ways, forbids the supposition that this was the result of any lack of intelligence or of comprehension of the questions, and, in the face of the testimony of the witnesses from the Isaac Bell and of the captain of the Norfolk,—a wholly disinterested person,— I feel bound to reject Roy's testimony on this point. The captain of the Repplier testified that his lamp was a new one, and Roy said that it gave a better light than the White Shoal light. The captain admitted that it had sometimes gone out after an hour or two's burning, and that its continuance depended upon its being properly trimmed beforehand; and, although they testify that it had been properly trimmed the afternoon preceding, I feel bound to hold that the weight of testimony decidedly shows that the lamp was not burning after 11 o'clock, when the Norfolk passed. Unless, therefore, the Repplier was at a place of anchorage where she was legally absolved from the duty of keeping any anchor light, she must be held in fault.

It has been held by the supreme court that "the absence of a light from a sailing-vessel will not excuse a steamer from coming into collision with her, whether at anchor or sailing, in a thoroughfare out of the usual track of the steamer." *N. Y. etc.*, v. *Calderwood*, 19 How. 241, 246; *The Granite State*, 3 Wall. 310, 313; *The Clarita*, 23 Wall. 1, 13. In the last case cited the facts did not call for any application of this principle; in the second, the barge was fastened to the end of the pier; and in the first case the schooner was out of the steamer's usual track—"as near the eastern shore as possible;" she

"carried a light from her breast-hook, and the steamer was hailed and told to keep off." These cases are, therefore, plainly to be distinguished from the present, since the Repplier, although at anchor in the stream in a dark night, afforded to the steamer no means of knowing her position until too late to avoid the collision. The principle of the above cases cannot be here applied unless it be found that the Repplier was at anchor at such a place in the river that the steamer had no legal justification or excuse for coming into her neighborhood.

It is impossible to reconcile the testimony of the different witnesses as to the precise place of anchorage. The captain, the mate, and the cook of the Repplier, and the captain of the Alexandria, all give the bearing of the light by the compass, and their estimate of its distance. All except the mate testify that the light bore N. N. W. from the place of anchorage; the mate testifies that it bore N. by W.; the libel states that it bore N. W. nearly a mile distant, and the captain of the Alexandria gives the same estimate of distance; while the captain of the Repplier gives the distance at about half a mile from the light, and Roy, the colored lad, at somewhat less. By reference to the chart, which is put in evidence, it will appear that a distance of half a mile from the light upon a course N. N. W. from the place of anchorage, as testified to by three of these witnesses, would locate the vessel in mid-channel, in at least 18 feet of water, and right in the usual track of steamers; and the location and distance as given by the libel would also fall in the same track. The captain testified that he could not tell whether the place of anchorage was in the channel or not; that the schooner drew, loaded, eight feet, and, with the center-board down, seven feet more; that he came to anchor before hauling up the center-board, and that he could not have proceeded much further away from the channel with the center-board down. A depth of only 15 feet could be reached within the distance of half a mile from the light, only directly abreast of it, at a point from which the light would bear N. E. by E. instead of N. N. W., as three of the witnesses agree in stating; that is, at a point at least half a mile further up the stream than the place assigned through the compass bearings given by the libellant's witnesses. The mate testifies that the place of anchorage was about abreast of the light; that is, directly across the river. The captain of the Alexandria says they were a little below the light. As the river is four miles wide and the shore irregular, any observation of the place of anchorage, as to whether it was abreast of the light or directly across

the river, might easily be very inaccurate, and would be liable to much variation in the estimate of direction.

The watch of Tapley, the lookout on the Isaac Bell, began at 2 o'clock, when he came on deck some time previous to the steamer reaching the White Shoal light, and he saw the collision. Walthall, the pilot, testifies that he noted the time of passing the White Shoal light at eight minutes past 2, and that the collision was some two or three minutes after that. The steamer was going from eight to ten miles an hour, and, taking the lowest estimate of speed and time, the collision, according to Walthall's testimony, must have been about 1,400 feet, or about a quarter of a mile below the light; and this point would still be further up the stream than the point indicated by the compass bearings as given by the libel and by the libellant's witnesses. These statements on both sides, in ways wholly independent, corroborate each other, and tend to show that the place of anchorage was considerably below the light, and in this direction a given distance from the light would bring the place of anchorage much nearer the steamer's track than the same distance directly abreast of the light. In the direction indicated by the compass bearings, as sworn to, a depth of 15 feet only would be found at not less than a mile distant from the light, and no one but the captain of the Alexandria gives any such estimate of distance.

The mate of the Repplier testifies that he hove the lead, and found the depth of water was two and a half fathoms. He says he did this after the vessel had anchored; that he hove it but once; that he had no particular purpose in doing so, and that he told no one at the time of the depth; but as the Repplier, with her center-board down, drew 15 feet of water, it is hardly probable that the schooner went upon shoal water until she struck bottom. Nor does the captain claim that; he only says that he could not have gone in much further, and it was then low water. The captain of the Alexandria, who was from 100 to 200 yards distant, and about one length further down the stream, testified that he anchored in two and a half fathoms of water, but does not state whether he hove the lead, or whether this was merely his estimate of the depth; and if that was the true depth where the Alexandria anchored, the depth of water from 100 to 200 yards nearer the light must have been somewhat greater. As the heaving of the lead by the mate was without any special object, and as no action was based upon it, it can only be regarded as a casual observation, at best, and not to be relied on for perfect accuracy.

The Isaac Bell drew, loaded, 14 feet of water, and the Norfolk about the same. Both vessels passed the White Shoal light very nearly in the same track. It is in the highest degree improbable that both vessels would have deviated largely from their ordinary course in the same night, and in the same direction, from no assignable cause. Those on board of each testify that they were upon their usual track, and that the Repplier was "in the channel," or "near the channel." Two witnesses from the light-house, who saw the schooners anchor, (to whose testimony, however, standing alone, I should not ascribe much weight,) also say that they were right in the channel.

From all this testimony it seems perfectly clear that the Repplier could not have been anchored so far from the channel as legally to dispense with the maintenance of the ordinary anchor light. Her position was certainly near the track of steamers. The depth of water there at half tide, when the Isaac Bell passed, must have been at least three feet in excess of her draught. It was in the navigable part of the river, and had an anchor light been exhibited by the Repplier there is no reason to suppose she would not have been avoided as the Alexandria was avoided; nor should I be warranted in holding, upon evidence so discrepant, that both the Isaac Bell and the Norfolk were so far out of their ordinary track as to be in a part of the river where they had no lawful right to navigate, so as to constitute *ipso facto* negligence contributing to the collision.

It is not necessary to consider the point raised by the claimant, whether the absence of an anchor watch, (*The Clara*, 13 Blatchf. 509; 102 U. S. 200,) or the failure to exhibit a torch-light, as provided by section 4234 of the Revised Statutes, would of themselves be a bar to the libellant's recovery. *The Samuel H. Crawford*, 6 FED. REP. 906; *Brainard* v. *The Steamer Narragansett*, 3 FED. REP. 251; *The Leopard*, 2 Low. 238; *The Eleanora*, 17 Blatchf. 88. There are other contradictions and irreconcilable discrepancies in the evidence as to other points in the case, on both sides, to which I do not think it necessary to refer, as the two points above decided are sufficient to dispose of the case. There was ample room for the Repplier to have proceeded further to the south for anchorage, and no difficulty in her doing so upon raising the center-board, wholly or in part; and the collision must be deemed to have arisen wholly from her fault in unnecessarily anchoring in, or too near, the channel, and when thus anchored in not maintaining a suitable anchor light.

The libel must, therefore, be dismissed, with costs.