## THE DORIS DEAN.

### DEAN v. BARGE TRANSPORT CO.
### No. 10588.

Circuit Court of Appeals, Fifth Circuit.

May 21, 1943.

Rehearing Denied July 1, 1943.

George W. Brown, Jr., of Beaumont, Tex., and Selim B. Lemle, of New Orleans, La., for appellant.

Edward C. Carrington, of Beaumont, Tex., for appellee.

Before SIBLEY, HUTCHESON, and McCORD, Circuit Judges.

McCORD, Circuit Judge.

The libel and cross-libel were for collision damages sustained in the nighttime when the moving barge "Dean-8", which was being pushed downstream near its port (east) bank, struck the unlighted barge "Butte" which was moored to the east bank of the Calcasieu River twelve miles downstream from Lake Charles, Louisiana. A hearing was had, findings of fact and conclusions of law were entered, and the trial court denied relief on the cross-libel, held the pushing tug "Doris Dean" solely at fault for the collision, and awarded damages against her for $1,548.00, interest, and costs. The owner of the "Doris Dean" has appealed contending that the "Butte" was improperly moored without lights in or near the channel or fairway, and that the "Doris Dean" was in no wise at fault.

After midnight on March 26, 1942, the Diesel Tug "Doris Dean", a shallow draft vessel, left Lake Charles, Louisiana, pushing the "Dean-8", a 160 foot steel, cabin barge. The tug and tow proceeded downstream and shortly before 3:30 A.M. reached a point twelve miles downstream where the Calcasieu River turns to the right and makes a straight reach of two thousand feet before entering Moss Lake to the left. In this reach the river is approximately 600 feet wide with a 200 foot channel down the middle. The Shell Oil Company Terminal is located on the east side of the river about halfway down the reach. The "Butte", a barge 160 feet in length and 32 feet in beam, was moored from five hundred to six hundred feet downstream below the oil terminal with her starboard side against the east bank of the river so that her port or outshore

side extended approximately thirty-five feet from the bank. As the "Doris Dean" and her tow entered the reach, the night was hazy and visibility was limited. The mate and his assistant were in the tug's pilot house, 190 feet aft of the forward end of the "Dean-8", and no other lookout was on duty. The tug and tow proceeded down the straightway far to the left of the mid-channel. After passing the Shell terminal, which extended one hundred feet into the river from the east bank, the tug and tow came nearer the east (port) bank, and following close in to the bank proceeded to the point where the "Butte" was moored, the port bow corner of the "Dean-8" striking the port forward corner of the "Butte", causing damage to both barges.

 It is a settled principle of Admiralty Law that liability for collision damages is upon the vessel or vessels whose fault caused the injury. The Standella, 5 Cir., 108 F.2d 619. A careful review of this record convinces us that the determination of fault by the District Judge was correct. The "Butte" was moored against the bank far to the east of the mid-stream ship channel. Although the "Butte" was not lighted, we think it clear that failure to have lights had nothing to do with the collision. The fault lay with the "Doris Dean" in navigating on a hazy night far out of the channel on her port side of the river near the bank in unsafe water without a proper lookout. The sole cause of the collision was the fault of the "Doris Dean" in improperly navigating under these conditions and she must answer in damages for the injuries caused to the "Butte". The Standella, 5 Cir., 108 F.2d 619; The Ottawa, 3 Wall. 268, 70 U.S. 268, 18 L.Ed. 165.

Affirmed.