Adrien I. BRUCE, Owner of THE M/V
SAN ANTONIO, Libellant,

v.

DEBUSE BARRAS COMPANY, and THE
M/V D-14, her engines, tackle, appar-
el, furniture, etc., Respondent.

Adrien I. BRUCE, Plaintiff,

v.

DEBUSE BARRAS COMPANY,
Defendant.

Admiralty No. 3534, Civ. A. No. 7575.

United States District Court
E. D. Louisiana,
New Orleans Division.

Dec. 11, 1958.

Adams & Reese, W. Ford Reese, New
Orleans, La., for libellant-plaintiff.

Faris, Leake & Emmett, Francis Em-
mett, New Orleans, La., for respondent-
defendant.

J. SKELLY WRIGHT, District Judge.

These actions arose out of a collision at night between a crew boat, the D–14, and an anchored shrimp trawler, the San Antonio. The owner of the San Antonio is plaintiff and libellant. There were filed in the record the depositions of the following witnesses: A. Bruce and Savoie, the owner and deck hand of the San Antonio; Renard and Hebert, the captain and deck hand of the D–14; Callais, Danos, F. Bruce, and Bouillion, fishermen from four other shrimp trawlers anchored at some distance from the San Antonio at the time of the accident. The parties have submitted the question of liability for determination on the basis of these depositions.

On the evening of March 2, 1957, between 6:00 and 7:00, the San Antonio anchored about a mile and one-half southwest of the No. 1 beacon light off the entrance of Southwest Pass to Vermilion Bay. Shortly after 8:00 P.M., Bruce, the owner, and Savoie, the deck hand of the San Antonio, the only ones aboard, retired for the night, having first set an anchor light as required by the Inland Rules.[1] The anchor light was located approximately amidships in a raised position above the cabin. The San Antonio was a white hull trawler about fifty-two feet in length.

At about this time the Emperator, another shrimp trawler, passed close by the San Antonio, and one Bouillion, aboard the Emperator, testified that the San Antonio's anchor light was burning and that, although it had been dark for some time, he was able to see the name of the ship clearly. There was testimony from two other fishermen on boats anchored in a bayou several miles away that between 8:00 and 9:00 P.M. they had seen the light of the San Antonio before turning in for the night.

The D–14 is a fifty-foot crew boat used to carry workers to and from offshore drilling barges. She is powered by two 275–HP Diesel engines, with twin screws and twin rudders. At about 9:10

P.M. on March 2, 1957, the D–14 left Magnolia Drilling Barge No. 5, which is located in the Gulf of Mexico about twenty miles southwest of Southwest Pass of Vermilion Bay. She was carrying a crew of workers to Intracoastal City on Vermilion Bay, and was making about 18 m. p. h. on a steady course of 065° toward the No. 1 beacon at Southwest Pass. Renard, a licensed operator, was at the controls, and Hebert, the deck hand, was present with him in the pilothouse from time to time. Shortly after 10:00 the D–14, running at full speed, struck the San Antonio squarely amidships, sheared off the top of her cabin, and sank her. Bruce and Savoie were rescued.

The principal questions presented are whether the anchor light of the San Antonio was burning up to the time of the collision, and, even if it was not burning, whether the D–14 exercised all due care under the circumstances. On both questions the evidence is not necessarily in conflict, but it is somewhat inconclusive. There was undisputed testimony that the San Antonio's anchor light was burning at 8:00 P.M., and perhaps at 9:00 P.M. However, both Renard and Hebert, on the D–14, stated that there was no light directly ahead of the D–14 other than the No. 1 beacon. Renard was the only eyewitness of the accident since Hebert had left the pilothouse a few minutes before the collision occurred. Renard's testimony may have been influenced by a natural desire to exonerate himself, but the Court has had no opportunity to judge his credibility. Moreover, since the D–14 sheared off the cabin of the San Antonio and took the anchor light with it, there was no evidence after the collision as to the condition of the light prior thereto.

As to the due care of the D–14, it was admitted that she was making 18 m. p. h. This was said to be her usual speed on this route. However, it was not shown that this was a safe speed under all the circumstances. Renard, the captain of the D–14, knew that the area in which the

[1] Inland Rules of the Road, Article 11, 33 U.S.C.A. § 180.

San Antonio was anchored was a place frequently used by fishing boats as an overnight anchorage. It was stated that the D–14 is a highly maneuverable boat. Yet she struck the San Antonio amidships, at right angles, at full speed. Renard did not shut down her engines until after the collision. It is evident that he did not see the San Antonio at all until the accident had actually happened. The night was dark, but it was clear, and there was testimony that on that night the white hull of the San Antonio could have been seen at a distance of 500 feet. The libellant has argued that the D–14 should have used its radar on this occasion. None of the cited cases go so far as to require the use of radar on a small boat on a clear night. In addition to the personnel problem involved, the apparent reason is that on a clear night the visibility is such that the naked eye is more dependable, at least for short distances.

■ In order to recover in full, the libellant "must prove both care on his own part and want of it on the part of" [2] the respondent. In this case, the San Antonio, to prove its own due care, must show that its anchor light was burning immediately prior to the accident.[3] The

evidence being inconclusive, the San Antonio has failed to sustain this burden, and the Court must infer that the San Antonio was at fault in this respect.

■ On the question whether the D–14 was also at fault, the San Antonio has the benefit of the presumption that a moving vessel is at fault when it collides with an anchored vessel.[4] This presumption has been variously defined and applied. It has been said that it does not apply when the anchored vessel was anchored in an improper place,[5] or was showing no lights;[6] and, conversely, that the moving vessel must still exonerate itself by showing its own due care notwithstanding the stationary vessel was improperly anchored,[7] or was without lights.[8] It has been said that the presumption shifts the burden of proof to the moving vessel;[9] that it does not shift the burden of proof but constitutes prima facie evidence of negligence which must be rebutted;[10] that it imposes upon the moving vessel a burden of explanation,[11] or a burden of going forward with evidence, which, when produced, causes the presumption to disappear.[12]

■ The confusion suggested by these definitions is probably more ap-

2. The Clara, 102 U.S. 200, 203, 26 L.Ed. 145.

3. American Dredging Co. v. Calmar S.S. Corp., D.C., 121 F.Supp. 255, affirmed per curiam, 3 Cir., 218 F.2d 823; Middlesex Quarry Co. v. The Albert Mason, D.C., 2 F. 821.

4. The Clarita and the Clara, 23 Wall. 1, 90 U.S. 1, 23 L.Ed. 146; The Virginia Ehrman and The Agnese, 97 U.S. 309, 24 L.Ed. 890.

5. Graves v. Lake Michigan Car Ferry Transp. Co., 7 Cir., 183 F. 378; The Ailsa, D.C., 76 F. 868, reversed 2 Cir., 86 F. 475; The Isaac Bell, D.C., 9 F. 842.

6. Ross v. Merchants & Miners Transp. Co., 1 Cir., 104 F. 302.

7. La Bourgogne, 2 Cir., 86 F. 475; The Helen, D.C., 1 F. 916; cf. The Victor, 5 Cir., 153 F.2d 200.

8. The James Gray, 21 How. 184, 62 U.S. 184, 16 L.Ed. 106; Grauds v. The American Trader, D.C., 88 F.Supp. 45; The Santiago, D.C., 160 F. 742; cf. The St. Charles, 19 How. 108, 60 U.S. 108, 15 L.Ed. 563; Rogers v. Saeger, 10 Cir., 247 F.2d 758.

9. The Oregon, 158 U.S. 186, 15 S.Ct. 804, 39 L.Ed. 943; Carr v. Hermosa Amusement Corp., 9 Cir., 137 F.2d 983; The Degama, 5 Cir., 150 F. 323.

10. Inland & Seaboard Coasting Co. v. Tolson, 139 U.S. 551, 11 S.Ct. 653, 35 L.Ed. 270.

11. A. S. Wikstrom, Inc., v. Morania Oil Tanker Corp., D.C., 131 F.Supp. 240.

12. The Victor, supra, 5 Cir., 153 F.2d 200, 203 (dissenting opinion).

parent than real. Although described as imposing a burden of proof, rebuttal or explanation on the moving vessel, this, presumption is not so much a guide to the trial tactics of the parties as an "aid to the court"[13] in weighing the whole case at the end of the evidence. If the proof as to fault is conclusive, the presumption disappears because it is unnecessary;[14] but where the direct evidence is incomplete or in serious conflict, the presumption supplies a legitimate inference based on experience and probabilities[15] to resolve the doubt and reach a just result. The judgment of experience here is that such collisions rarely occur without fault, and that when the evidence as to fault is inconclusive it is reasonable to infer that some degree of fault may be charged to the vessel which was, or should have been, able to control its movements at the time of the collision.[16] Where the facts giving rise to the presumption are established, the question is whether, considering all the other evidence presented in the case, the inference of fault on the part of the moving vessel is still warranted. In one case proof of improper lights on the anchored vessel may, by itself, be sufficient to rebut the inference;[17] in another it may not.[18] No fixed rules for applying this presumption can be laid down, for the strength of the inference will depend on the circumstances of the particular case.[19]

In the present case the circumstances of the collision are not such as to dispel the inference that the D–14 failed to exercise due care and that such failure was a contributing cause of the accident. The damages must be divided.

Decree accordingly.

13. Coyle Lines v. United States, 5 Cir., 195 F.2d 737, 739.

14. Cf. The Victor, supra, and the many cases like The Doris Dean, 5 Cir., 135 F. 2d 731, which make no mention of the presumption in determining liability.

15. See Griffin, Collision (1949), § 25.

16. Cf. La Bourgogne, supra, 2 Cir., 86 F. 475, 477.

17. E. g. The Santiago, supra.

18. E. g. The James Gray, supra.

19. Coyle Lines v. United States, supra.