**DIESEL TANKER F. A. VERDON, INC.,** as owner of the tank vessel F. A. Verdon, Libellant-Appellant,

v.

**STAKEBOAT NO. 2 and Bronx Towing Line, Inc., Claimant-Respondent-Appellee.**

**BRONX TOWING LINE, INC.,** as owner of the Stakeboat No. 2, Libellant-Appellee,

v.

**TANK VESSEL F. A. VERDON and Diesel Tanker F. A. Verdon, Inc., Claimant-Respondent-Appellant.**

No. 220, Docket 28549.

United States Court of Appeals Second Circuit.

Argued Dec. 4, 1964.

Decided Jan. 19, 1965.

Stephen J. Buckley, New York City (Christopher E. Heckman, Foley & Martin, New York City, on the brief), for appellant.

Herbert B. Halberg, New York City (Maurice A. Krisel and Krisel & Beck, New York City, on the brief), for appellee.

Before FRIENDLY and SMITH, Circuit Judges, and BLUMENFELD, District Judge.*

BLUMENFELD, District Judge:

These two appeals briefed and argued together present a problem of applying the same principles of admiralty law to opposing sides of the same controversy. The owners of two ships each brought a libel against the other and the two actions were consolidated for trial below.

The owners of the tanker F. A. Verdon and the Stakeboat No. 2 each contended that the other's vessel was solely responsible for a collision which occurred in Red Hook Flats, New York Harbor, during the night of June 15, 1960.

The District Judge concluded that the collision was caused by negligent operation of the Verdon. He was unable to determine whether or not the Stakeboat No. 2 was unlighted, as the Verdon claimed. He dismissed the Verdon's libel and awarded Stakeboat No. 2 full damages against her. We affirm the dismissal of the Verdon's libel and the conclusion that she was at fault and thus liable to Stakeboat No. 2, but disagree with the allowance of full damages to the latter.

The significant facts as found by the court below are not complicated. A collision took place in a Federal Anchorage in Red Hook Flats between anchored Stakeboat No. 2 and the tanker F. A. Verdon on the night of June 15, 1960. The collision occurred at 11:35 p. m. At that time, no one was aboard the stakeboat.

Visibility was limited by haze, intermittent fog and smoke; but navigation and shore lights, a mile and a half away, could readily be seen. The Verdon's captain and the deck hand, an able seaman, were in the wheelhouse. About 3 or 4 minutes before the collision, the wheel had been turned over to the deck hand with orders to hold the ship "steady as she goes." Meanwhile, the captain was watching for traffic in the main ship channel, off his port side. There was no lookout on the tanker's bow. The Verdon is a tank vessel 204.5 feet long with her wheelhouse located approximately 180 feet back from her bow. The Verdon was in a light condition and proceeding at a full speed of 8 to 9 knots, well in excess of the permissible speed of 6 knots. This raised the bow higher above the surface of the water than the stern and produced a "blind area" for 30 or 40 yards ahead of the bow for one in the

* Sitting by designation.

wheelhouse. The radar was on, but the captain did not look at it. The stakeboat, 92 feet in length and constructed of steel, would have made a good radar target. Neither the captain nor the deck hand saw the stakeboat until after the collision.

One of the strongly contested factual issues was whether the stakeboat carried forward a white light visible all around the horizon at the distance of at least one mile as she was required to do. 33 U.S.C. § 180. After a careful consideration of conflicting oral testimony in which credibility was, in some measure, a factor for the trier to weigh, and of circumstantial evidence from which the reasonableness of inferences to be drawn were also within the power of the trial judge to resolve, he found, "I cannot affirmatively find that, on the night of the collision, the white light was burning." On the other hand, he stated, "I am not persuaded that the white light *was not* burning." To leave no room for doubt as to what he found on this issue, he continued, "I freely confess my inability to make a definite finding one way, or the other."

When the owner of the Verdon brought its case into court it assumed the affirmative. With respect to the factual issue of whether the stakeboat was lighted, the burden of proof rested upon it. The general principle was stated in Commercial Molasses Corp. v. New York Tank Barge Corp., 314 U.S. 104, 112, 113, 62 S.Ct. 156, 161, 162, 86 L.Ed. 89 (1941): "Wherever the burden rests, he who undertakes to carry it must do more than create a doubt which the trier of facts is unable to resolve * * * 'If the determination of this question is left in doubt, that doubt must be resolved against' the shipowner." Since the Verdon did not carry the burden of establishing fault on the part of the stakeboat, her libel was properly dismissed. "Where the fault is wholly on one side, the party in fault must bear his own loss, and compensate the other party, if such party have sustained any damage." The Clara, 102 U.S. 200, 202, 26 L.Ed. 145 (1880).

A somewhat more troublesome question is presented on the appeal from the judgment awarding full damages to the owner of the stakeboat. The court's conclusions and findings that the tanker was grossly at fault in proceeding through the anchorage in excess of the speed limit with no lookout forward and no one paying any attention to the radar were amply supported.

But its fault alone was not sufficient to support the award of full damages to the stakeboat. "In a cause of collision, the plaintiff, in order to recover entire damages, must prove both care on his own part and want of it on the part of the defendant." The Clara, supra, 102 U.S. at 203. Bruce v. Debuse Barras Co., 169 F.Supp. 90, 92 (E.D. La.1958).

Although the negligent navigation of the Verdon was clearly established, Stakeboat No. 2 did not affirmatively satisfy its burden of persuading the trier that it was lighted. Article 11 of the Inland Rules of the Road, 33 U.S.C. § 180, in force at the time of the collision. reads in part as follows:[1]

"A vessel under one hundred and fifty feet in length when at anchor shall carry forward, where it can best be seen, but at a height not exceeding twenty feet above the hull, a white light in a lantern so constructed as to show a clear, uniform, and unbroken light visible all around the horizon at a distance of at least one mile:"

Despite the stakeboat's failure to prove its compliance with the duty to display a light, the opinion below, after holding that there was no excuse for the Verdon's faults, continued: "In comparison with them, the sin of the stakeboat, if any, was venial, and should be condoned [cited cases omitted]. Consequently, I conclude that the collision was caused solely through the faults of the *Verdon*, * * *"

1. This section has been amended as of August 5, 1963, Pub.L. 83–84 § 1, 77 Stat. 116.

■ Although findings of fact in suits in admiralty must be accepted unless they are "clearly erroneous," McAllister v. United States, 348 U.S. 19, 20, 75 S.Ct. 6, 8, 99 L.Ed. 20 (1954); Cunningham v. Rederiet Vindeggen A/S, 333 F.2d 308, 312 (2d Cir. 1964), we are not so limited as to erroneous views of the law. To the extent that conclusions may have been reached by the application of an erroneous rule of law to the facts found, they are open to full review. Castro v. Moore-McCormack Lines, Inc., 325 F.2d 72, 75–76 (2d Cir. 1963). Cf. American Technical Mach. Corp. v. Caparotta, 339 F.2d 557 (2d Cir. 1964).

■ Even in the absence of any regulations, under established principles of admiralty law, the risks to other vessels created by a vessel lying at anchor at night without lights, even though in a permissible place, can hardly be regarded as trivial. The creation of undue risks of injury is negligence. The James Gray, 62 U.S. (21 How.) 184, 189, 16 L.Ed. 106 (1859). And, where the duty is imposed by statute, 33 U.S.C. § 180, compliance has been held to be imperative. American Dredging Co. v. Calmar S.S. Corp., 121 F.Supp. 255 (E.D.Pa.1954), aff'd per curiam, 218 F.2d 823 (3d Cir. 1955), held that the dredging company was under an absolute obligation to have proper anchor lights upon its anchored mudscows. And see Bruce v. Debuse Barras Co., supra, 169 F.Supp. 90, cases at 92, n. 8. As pointed out by Judge Learned Hand in Merritt-Chapman & Scott Corp. v. Cornell S.S. Co., 265 F.2d 537, 539 (2d Cir. 1959), "a different rule applies to the breach of a statutory duty from the breach of an ordinary duty. The doctrine of The Pennsylvania, 19 Wall. 125, 136, 22 L.Ed. 148, is that when the fault consists in the breach of a 'statutory rule intended to prevent collisions * * * the burden rests upon the ship of showing, not merely that her fault might not have been one of the causes, or that it probably was not, but that it could not have been.'" It was held in Tide Water Associated Oil Co. v. The Syosset, 203 F.2d 264 (3d Cir. 1953), that there is no

room for application of the major-minor fault rule where there is a violation of a statutory requirement intended to avoid collisions for the reasons given at pages 268–269, and more thoroughly explained by Judge Friendly in In re Kinsman Transit Co., 338 F.2d 708, 720 (2d Cir. 1964), where he revealed the court's awareness of the view held by some that

"results of the equal division principle which are sometimes quite as shocking as those of the common law bar for contributory negligence— especially in cases where reliance by a relatively innocent plaintiff on the 'major-minor fault' exception has been thought to be barred by the rule of The Pennsylvania, 19 Wall. (86 U.S.) 125 [22 L.Ed. 148] (1874), that a party to a collision who has violated a statutory rule of navigation may not escape liability except on proof that the violation could not have contributed to the accident. See MacIntyre, supra [The Rationale of Last Clear Chance] 53 Harv.L. Rev. at 1236–41; Gilmore & Black, Admiralty, 403–407, 438–442."

Nevertheless, we have unequivocally adhered to the doctrine of The Pennsylvania, 86 U.S. (19 Wall.) 125, 22 L.Ed. 148 (1874). Topor-Taparek v. Socony Mobil Oil Co., 339 F.2d 792 (2d Cir. Dec. 29, 1964).

■ Thus, where the breach of duty is statutory, it is the *impossibility* that it may have been one of the causes of the collision, not the forgivability of one which did, that affords relief from liability for that violation. No tour de force can transmute the minor fault among varying degrees of negligence into the non-existence of proximate cause. See In re Kinsman Transit Co., supra. The crucial omission in the stakeboat's libel is the absence of a finding that its violation "could not have contributed to the accident." Having found that Stakeboat No. 2 did not meet its burden of proving that it was lighted as required by the statute, under the rule administered in American admiralty the trial court

should have required her to bear half her loss.

The decree must, therefore, be reversed, and the case remitted to the court below for the purpose of carrying this division into effect.