## RUBERRY v. UNITED STATES.

### No. 1498.

United States District Court,
D. Massachusetts.

June 1, 1950.

684

———◆———

Stephen S. Bean and Schneider, Reilly & Bean, all of Boston, Mass., for petitioner.

George F. Garrity, Asst. U. S. Atty., Gerald J. McCarthy, Boston, Mass., Thomas H. Walsh, Boston, Mass., of counsel, for respondent.

McCARTHY, District Judge.

The libellant brings this libel against the respondent, the United States of America, under the provisions of the Suits in Admiralty Act, 46 U.S.C.A. § 741 et seq., for injuries alleged to have been incurred as the result of the negligence of the respondent.

Before trial it was stipulated that the libellant was a seaman and a member of the crew of the S. S. Klamath Falls, and an employee of the respondent.

In February, 1947, the libellant shipped aboard the S. S. Klamath Falls, out of Providence, R. I., as an ordinary seaman.

On March 10, 1947, he was ordered by the boatswain to help remove a rack which had been used to support smoke pots. The smoke pots were no longer there but the rack still remained on the fantail. This rack was a tilted table having a steel top and legs underneath. The latter were made of angle iron and were welded to the deck. The table was slanted towards the water to facilitate the dumping of the smoke pots. The libellant and another seaman, a "deck-maintenance man", were instructed to remove the rack from the deck and tip it overboard. The boatswain supplied them with a two and one-half ton "chain-fall" which is variously described as a "sort of pulley" or block and tackle and which the libellant testified gave a "lot of leverage".

When the boatswain provided the chain-fall, libellant, who had had some experience himself as a boatswain, explained that the legs could be better detached with a hacksaw and sledge hammer. The boatswain, however, told him to proceed with the chain-fall. Whereupon the libellant and the deck-maintenance man proceeded to pull out the legs of the rack with the help of the chain-fall. A wire strap was placed around each angle iron and extended to a padeye four or five feet away. The chain-fall was then attached. Libellant then hauled away on the chain-fall, assisted by the deck-maintenance man, who was behind him. The first leg of the rack came off easily; the fifth and sixth came away with difficulty. Libellant and his companion encountered even more difficulty with the seventh leg. It finally came away from the deck. At the trial libellant testified that when the seventh leg pulled away he fell against a bulkhead which was ten or eleven feet away from the rack; that he felt a "ripping or gnawing" pain. However, in answer to interrogatories propounded by the respondent he stated, "I was bending over helping deck maintenance in removing angle irons—after three or four pulls necessitating extra strain it gave way and the jar forced me to straighten up suddenly from a crouched position thus putting extreme pressure on my abdominal muscles." At any rate, libellant reported his injury to the purser but continued to work until the end of his watch. Subsequently he was sent ashore at Curacao, examined, taken back to the United States and admitted to a United States Marine Hospital where he was found to be suffering from a ventral epigastric hernia. The patient was advised to lose weight—he stands 5 feet 9 inches and at the time of his admission to the Marine Hospital weighed 292 pounds—before an operation would be considered advisable. He did lose some weight but is still considered a "poor surgical risk". In the opinion of the libel-

lant's medical expert the hernia was causally connected to the work done on the smoke pot rack on March 10, 1947, and I so find.

I am unable to find, however, that the accident was the result of any negligence on the part of the respondent. The libellant has tried his case on the theory that the respondent, through its agents and servants, was negligent in failing to supply adequate and proper tools for the work ordered to be done.

■ There was no evidence that the chain-fall supplied to the libellant was defective in any respect. The gist of the libellant's case, then, is that the method heretofore described for removing angle-irons with a chain-fall was unsafe and improper and that the respondent was negligent in prescribing such a method. The only evidence on this aspect of the libel was the libellant's testimony that he told the boatswain's mate that the rack legs could be better detached with a hacksaw and sledge hammer and that on other ships, when instructed to remove such angle irons in "the best and easiest way", the libellant had employed a hacksaw and sledge hammer. There was no evidence that the method used aboard the S. S. Klamath Falls was unsafe or improper and the court is not in a position to take judicial notice that in maritime circles removing such angle irons by means of a chain-fall is unsafe or improper. Procter for the libellant argues strongly and with much force that such is the case but it goes without saying that argument is never a substitute for evidence.

■ Respondent's duty was not to supply the best tools, but only tools which were reasonably safe and suitable. Jacob v. City of New York, 315 U.S. 752, 758, 62 S.Ct. 854, 86 L.Ed. 1166; The Cricket, 9 Cir., 71 F.2d 61; The Tawmie, 5 Cir., 80 F.2d 792. The fact that a better tool and a better method might have been employed in the task cannot aid the libellant in the absence of a showing that the tool or method actually used was unsafe or unsuitable.

Since the Court finds no negligence on the part of the respondent, the libel must be dismissed.