**496**

Paulino G. COLOMBO, Plaintiff,

v.

The TEXAS CO., Defendant.

United States District Court
S. D. New York.

April 27, 1956.

Rassner & Rassner, New York City,
Herbert W. Sternfeld, New York City,
of counsel, for plaintiff.

Tompkins, Boal & Tompkins, New
York City, Arthur M. Boal, New York
City, of counsel, for defendant.

DAWSON, District Judge.

This action was tried by the Court without a jury pursuant to stipulation of counsel. The complaint asserted two causes of action:

(1) for personal injuries alleged to have been suffered by the plaintiff, a seaman, due to the negligence of the defendant in that the plaintiff was ordered and directed to lift a heavy and excessive weight without being provided with sufficient aid and assistance; and

(2) for the expenses of the maintenance and cure of the plaintiff.

### The Facts

Plaintiff, who at the time of the incident involved in the action was a seaman working on the S. S. South Carolina owned by the defendant, is twenty-five years of age. He had been working as a seaman for seven years previous to this incident. The ship upon which he was working was an oil tanker. He was earning about $440 a month, including overtime.

Plaintiff testified that on August 26, 1953, a day before the voyage ended, he and several other seamen were ordered by the boatswain to assist in the raising of certain "stuff" from the forward pumproom to the deck of the ship, which was a height of about thirty-five to forty feet. He stated that he and two other seamen were on the deck of the ship operating a rope attached to a pulley and block which dropped into the pumproom, and that the boatswain who was in the pumproom attached various articles, such as pipe, to the rope, and that these articles were lifted to the deck of the ship. He stated that there came a time when the rope was attached to a valve weighing approximately 150 pounds, and that he and the other two seamen endeavored to raise it by the pulley; that they raised it about two feet and then found that they could not

get it up with the single pulley. They reported this to the mate who was on the deck and he instructed them to get a "handy billy", which is a triple block and tackle device, rather than a single pulley. They secured this device, put it in operation, and got the valve up to the deck and completed the work; that thereafter the plaintiff resumed his routine duties such as painting, scraping paint, etc. until the end of his watch.

The plaintiff stated that while pulling on the valve with the single pulley together with the other two seamen, he experienced pain in his groin and testicles. He states that after he went off watch, and while taking a shower, he felt pain in the region of his testicles. He reported this to the radio officer who made out a report which was signed by the plaintiff. The report indicated that four days previous, the plaintiff had felt pain in his back and that on the day while taking a shower, he had felt pain in his testicles.

The following day plaintiff signed off the vessel and on the next day went to the United States Public Health Service Out-Patient Department in New York City. The hospital record there indicated that plaintiff had pain in his right testicle which was diagnosed by the hospital as sub-acute right epididymitis, which is an infection of the epididymis, which is a portion of the male genital tract where the secretion is manufactured that lubricates the sperm. The examination at the hospital indicated no evidence of venereal disease or of tuberculosis. The plaintiff was treated with antibiotics and a suspensory for the testicles for about three weeks. The plaintiff went to this Public Health Service office several times as an outpatient and on September 24, 1953 was discharged as fit for duty. He decided not to go back to sea for personal reasons, among which were that he had recently had a child and did not wish to be separated from his wife and family, and also the fact that he was worried from the accidents and illnesses which he had seen occur at sea. In October, 1953,

he took a job as a painter and has since that time been working on shore. The evidence was that he has had no permanent effect from this incident.

The plaintiff admitted that he had received his maintenance in full up to the time that he was certified as fit for duty. No evidence was offered of any expense for medical treatment.

There was certain conflicting evidence as to what might be the cause of epididymitis. It was admitted that essentially this was an infection of the epididymis, a small tube running from the testicle. The physician called as a witness by the plaintiff testified that he examined the plaintiff on October 9, 1953 and found that he had developed an epididymitis, but that when he examined him shortly before the trial, there was no evidence that this condition continued. This physician said that although such infection might come from diseases such as venereal disease or tuberculosis, it might also be caused by trauma, such as a blow or unusual strain. The physician called as a witness for the defendant testified that this infection could not develop spontaneously nor could it develop from a strain without a previous predisposition. The latter physician testified that if this infection resulted from torsion, it would have resulted immediately in excruciating pain, and the plaintiff would not have been able to continue work.

It was stipulated that if the captain, boatswain and radio officer were called as witnesses, they would testify that the plaintiff had never reported to them that he had had an accident or made any complaint to them.

Plaintiff called as an expert in the customs of the sea a retired sea captain of some thirty-nine years experience. He stated that it would be the customary practice at sea in lifting a weight of 150 pounds to use a "handy billy", but admitted that it was not an unusually heavy weight for three men to lift and that it was "normal" for three men to lift a weight of 150 pounds with a single pulley.

## The Issues

There are two issues involved in the case:

(1) Was the illness of the plaintiff occasioned by negligence of the defendant, within the meaning of that term as used in the Jones Act, 46 U.S.C.A. § 688?

(2) Has plaintiff failed to receive maintenance and cure to which he was entitled?

## Discussion

Since it was admitted that plaintiff had received his maintenance up to the time that he was certified as fit for duty, and that shortly thereafter, he resumed employment, and since he has shown no expenditure of any amount for medical or hospital care, the second cause of action for maintenance and cure should be dismissed.

■■ It is fundamental that damages may be recovered under the Jones Act only for negligence. No issue of unseaworthiness has been presented. The Jones Act is not a Workmen's Compensation Act and does not impose liability without fault. De Zon v. American President Lines, 1943, 318 U.S. 660, 63 S.Ct. 814, 87 L.Ed. 1065. The burden of proof in such cases is upon the plaintiff to prove the defendant was negligent and that such negligence was a proximate cause of the injury. Rouchleau v. Silva, Cal.App.1949, 208 P.2d 697, 1950 A.M.C. 673, 676; Kelcey v. Tankers Co., 2 Cir., 1954, 217 F.2d 541.

In the present case, there may well be a question as to whether the condition of which plaintiff complained, and which may have incapacitated him for a few weeks, was proximately caused by pulling upon the rope in an endeavor to lift the valve. On this the evidence is conflicting. But giving the plaintiff the benefit of the doubt on this point, we still have the question as to whether instructing the plaintiff, together with two other seamen, to lift a weight of 150 pounds by a single pulley was negligence. This is a question of fact which must be determined by the Court. As

the Court said in Larsson v. United States, D.C.N.D.Cal.1949, 1950 A.M.C. 176 at page 178, affirmed Larsson v. Coastwise (Pacific Far East) Line, 9 Cir., 1950, 181 F.2d 6, certiorari denied 340 U.S. 833, 71 S.Ct. 55, 95 L.Ed. 612:

"While seamen are considered wards of the court and justifiably are entitled to special consideration insofar as being given a safe place to work, shipping companies are not absolute insurers. It is not incumbent upon them to treat seamen as if they were in swaddling clothes and incapable of using a modicum of care for their own safety."

■ The expert witness called by the plaintiff testified that it was normal for three seamen to lift a weight of 150 pounds with a single pulley, and that this was not an unusually heavy weight for three seamen to lift. Common sense and experience would lead to the same conclusion. Defendant's duty was not to supply the best tools for lifting weight, but only tools which were reasonably safe and suitable. Jacob v. City of New York, 1942, 315 U.S. 752, 62 S. Ct. 854, 86 L.Ed. 1166. The fact that a better tool might have been employed in the task cannot aid the plaintiff in the absence of a showing that the tool or method actually used was unsafe or unsuitable. Ruberry v. United States, D. C.Mass.1950, 93 F.Supp. 683, 685.

The Jones Act does not repeal the laws of common sense, nor does it mean that seamen are to be treated as infants in the work assigned to them.

## Findings

■ The Court finds as a fact that the plaintiff has not established, by a fair preponderance of the evidence, that the injuries complained of by the plaintiff were proximately caused by the negligence of the defendant. The Court concludes that judgment should be entered for the defendant on both counts.

This opinion shall constitute the findings of fact and conclusions of law of the Court.